No. 10;154.

CAMP, ET AL. v. WINEGAR, ET AL.

Decided October 2, 1922.  Extended time for filing petition for re-
hearing expired November 3, 1922.

Proceeding for the determination of corners and bound-
aries of lands.  Report of commission approved.

*Reversed.*

1. BOUNDARIES—*Determination.*  Under the provisions of chapter
    126, Laws of 1907, concerning the determination of disputed
    boundaries, there is no ground for making or directing a sur-
    vey, unless there are boundaries in dispute, and when there
    are such disputed boundaries, the survey must be limited to
    their establishment.

2. *Government Records—Presumption.*  The presumption is that
    government records, showing an interior survey of a township,
    speak the truth.

3. APPEAL AND ERROR—*Failure of Proof.*  Evidence reviewed and held
    not to sustain a judgment concerning the establishment of
    boundaries and. corners.

*Error to the District Court of Kit Carson County, Hon.
Arthur Cornforth, Judge.*

Mr. W. PENN COLLINS, Mr. W. G. HOUSTON, Mr. GUY
D. DUNCAN, for plaintiffs in error.

Mr. LOUIS VOGT, Mr. A. P. TONE WILSON, JR., for de-
fendants in error.

*Department Two.*

MR. JUSTICE TELLER delivered the opinion of the court.

DEFENDANTS in error presented a petition to the dis-
trict court of Kit Carson County for the appointment of
a commission to ascertain and establish "the corners and
boundaries" of all the lands in township 7 S., R. 44 W.,

all of which were alleged to be in dispute. The court appointed D. D. Buck and A. Cary as such commission. Cary, in due time, filed a report of a resurvey of the entire township, in which Buck joined, though he had taken no part in the work.

Upon objections filed by plaintiffs in error, in form of an answer to the petition, a hearing was had in which testimony at considerable length was taken as to the existence of government corners and recognized lines in the township, upon the conclusion of which hearing the report was approved, and judgment entered accordingly. The cause is now before us for review.

Counsel for plaintiffs in error could have materially lightened the labors of this court if they had given some attention to the make up of the record. As it is, it contains matters having no relevancy to the cause, the various pleadings and orders are jumbled together without chronological order, and the dates of filing the papers are to be discovered, it at all, only by reference to a rubber stamp legend on the back of the last page of the respective papers.

Chapter 126 of the Laws of 1907, under which this proceeding was brought, provides for the appointment of a commission to determine and establish true boundaries in case of dispute, to take the testimony of witnesses as to the location of such boundaries, also to take testimony as to boundaries or corners which are alleged to have been recognized or acquiesced in for twenty years or more, and that, if the boundaries have been so recognized and acquiesced in for twenty years, they shall be permanently established as such boundaries. The order appointing the commission followed the statute in requiring the commissioners to take testimony as to the boundaries alleged to have been so recognized.

It is clear from the statute that the duty of the commissioners is to ascertain first, the boundaries as originally established, and, if that be not possible, to take testimony upon such boundaries as are alleged to have been recog-

nized for twenty years. In this case Commissioner Cary seems to have ignored the latter provision of the statute, and determined the matter wholly upon the question of original corners still recognizable as such. The record includes the testimony of several witnesses, undisputed, to the existence of corners and lines, known and recognized for more than twenty years, all of which is disregarded in the report.

The allegation in the petition that all the boundary lines in the township were in dispute was specifically denied in the answer. The court found generally in favor of the petitioners, though there is not a word of evidence in the record that any boundary was in dispute. As to one line, there is affirmative evidence that there was no contention over it between the owners whose lands it divides. They certainly cannot be compelled to accept a new division line.

The evident purpose of the statute is to provide for a definite settlement of disputed boundaries, and there is no ground for the directing, or the making of a survey, unless there are boundaries in dispute. When there are such disputed boundaries the survey must be limited to their establishment. Nowhere in the statute is there authority for a resurvey of the whole township because some of the boundaries therein are in dispute; much less when none is in dispute.

The decree recites that the survey was made by the commissioner who in fact took no part in it, no mention being made of the one who made the survey, though both commissioners signed the report.

It appears that Buck had, at a time prior to his appointment on this commission, made a survey of a part of this township, or had made a search therein for original corners. It further appears that he found at least one corner which he said was too plain to be ignored. Cary, the other commissoner, also according to the testimony, made statements which he does not wholly deny, to the effect that interior corners, pointed out to him as such were so plain that they must be recognized as government corners.

Indeed, he testified that until he had called to his assistance another surveyor, he was of the opinion that the township had been subdivided, as the records in the surveyor general's office show.   Upon the authority of this other surveyor, who had no official connection with the survey, Carey rejected evidence theretofore regarded as conclusive as to corners and lines, and proceeded to resurvey the whole township.

There were witnesses who claimed that they had been familiar with the township for from twenty to thirty years, and who testified specifically as to certain corners, long recognized as such—in some instances thirty years ago—and their location identified by fences built by reference to them.   The commissioner's rejection of this evidence appears to have been based wholly upon the fact that the surveyor, whom he called in to assist him, did not at that time find any markings which he was willing to accept as government corners.   In several cases the obliteration of these corners, to which witnesses had testified, was accounted for by the grading of roads over them. Testimony that monuments, such as are made in the survey of public lands, were many years ago seen and recognized as such monuments is not contradicted by the expressed opinion of a surveyor, who did not see them, that they were not such corners.   So far as competent evidence is concerned, the testimony is all one way; and the final concluson of Commissioner Cary that the township had never been subdivided is wholly without support in the record.

The presumption is that government records showing an interior survey speak the truth; and to permit changes in boundaries which locate corners five to six hundred feet from the position, which has been given to them by property holders by relation to recognized monuments, finds no justification in this evidence.   In this case it appears that all interior boundaries are changed by the decree, placing, in one instance, a man's building and improvements upon the land now allotted to another, and putting

his well in the middle of the highway. All the public roads are likewise changed in location. ·

A review of the record supports the assignments of error that the evidence does not sustain the decree, and that the survey was not made according to law. It not having been established that any boundary was in dispute, it follows that the condition which authorized the appointment of a commission did not exist, and the appointment was illegal, as was also the entire survey. The judgment is reversed, and the cause remanded with directions to discharge the commission, and, if the parties so desire, afford an opportunity for the determination of the issue of disputed boundaries. If there are such disputed boundaries, the duties of any commission appointed shall be limited to their establishment.

MR. JUSTICE DENISON and MR. JUSTICE WHITFORD concur.