EDWARD D. PLIMPTON v. WALDO CONVERSE.

*Prescriptive Right. Adverse Possession. Easement. Presumption. Burden of Proof.*

Where the defendant, owning a grist-mill and the lands around it, had been accustomed to use an open space upon the west side for mill purposes, mainly for customers to pass to and from the mill, and finally sold the mill and appurtenances, but no land west of the mill, it was *held* that the grantee took no right of way over said open space, the mill being otherwise accessible.

If there had been a right of way appurtenant to the mill over the defendant's said land prior to his purchase of the mill, it ceased to exist when the title of the mill and the land west of it were united in the defendant; and it having been so extinguished, and as the defendant retained the land west of the mill when he sold the mill, the sale would not revive the easement.

In absence of any proof or circumstances indicating the contrary, it may do to assume that the use of an easement is adverse and under a claim of right, but where the nature of the use leaves it doubtful, it is for the jury, and not the court, to say whether, upon the proof and circumstances, the user has been under a claim of right, and adverse.

The *prima facie* presumption is that a person's enjoyment of his own land was an exercise of his right so to enjoy it, and if another claim an easement thereon the burden is on the latter to show that the interruptions of the owner were consistent with the latter's claim, and not on the owner to show that they were inconsistent with it.

TRESPASS on the case, for obstructing a way to the plaintiff's grist mill. Plea, the general issue. Trial by jury, September term, 1868, BARRETT, J., presiding.

Upon the trial the plaintiff's evidence tended to show that for upwards of sixty years there had been a grist mill in the village of Wardsboro, where his mill now is; that the old mill and the land around it were owned by the defendant for a few years prior to the year 1847, and in that year the mill was burnt, and immediately after the new mill, which is now standing, was built by the defendant, a little larger than the old one, with the north end and the west side at the north-west corner standing upon the same place where the same parts of the old mill stood; that the door to the old mill was at the north-west corner on the west side, and the door to the new mill at the same corner on the north end; that the land on which the mill stands is on the south side of the road running east and west through Wardsboro village, and that the mill stands about 22 feet back from the road; and that

for more than 60 years past the land in front and west of the mill, as far north as the highway, and as far west as where the defendant's front yard fence now is, which is three or four rods west of the mill, has never been inclosed by any fence, and that during all the time that the old mill stood all persons going to the mill passed over this open space, in any direction they pleased, to and from the mill door; that in 1847, after the defendant had got the new mill built and enclosed, he sold it, with the appurtenances, to one Ira Baldwin, and conveyed with it the land on which it stood and land north of it to the highway and as far west as the west side of the mill; that Baldwin, in the same year, conveyed the same premises to Ezra Baldwin, and within a year or two the same premises by one or two conveyances, and by inheritance, passed to the plaintiff and his father, who after that time occupied the mill and carried on the business as partners until 1865, when the father died, and since then the plaintiff, as survivor, has occupied and carried on the business alone; that after the defendant sold the new mill to Baldwin the occupants of the mill, and all persons having business at the mill at all times, passed to and from the mill door over the open land in front and west of the mill wherever they pleased, unless they might occasionally pass one side or the other of a carriage, or sometimes of a wood pile or pile of logs temporarily left on this open space by the defendant. Things so continued until the 3d day of December, 1867, when the defendant placed a barn upon this open space, with the east side of it about two feet west of the mill, and extending northward in a line nearly parallel with the west side of the mill, toward the road, about 19 feet, thereby preventing the plaintiff and his customers from passing up to and away from the mill door as conveniently as they had been accustomed to do, and seriously damaging the mill. The defendant's evidence tended to show that since he sold the mill in 1847 he has used this open space whenever he pleased for putting carriages upon it, and has occasionally piled lumber upon it, and in the winter season piled logs upon it, to be sawed at a mill of his at the back side of it, and for three or four winters, for a month or two, he so filled up the space with logs to be sawed, that the passage to and from the grist

mill door was nearly or quite as much obstructed as by the barn he put there in December, 1867. These years were from 1858 to 1863.

Upon this evidence the plaintiff claimed that he was entitled to a verdict for such damages as he had sustained, by reason of not having had as convenient a passage to and from his mill door as he had been accustomed to have, by reason of the obstruction occasioned by the barn placed there by the defendant, from the time the barn was put there to the commencement of this suit.

The court intimated, after the evidence was closed, that, as the case would go to the supreme court any way, for the purpose of presenting the questions, it might be best, *pro forma*, to hold that upon the evidence the right of use, as such use had been made of said open space, in getting to and from the old mill, passed by the deed of the defendant to Baldwin and his grantees. And also that such use as the plaintiff's evidence tended to show since said conveyance by the defendant, if continued without interruption for fifteen years, would give the plaintiff the right of such use of the same, by himself and customers, unless the occupancy by the defendant, such as the jury should find from the evidence, had been in the exercise and assertion of a claim of right to exclude and prevent the plaintiff and his customers from using said premises in the manner his evidence tended to show.

To this the parties assented, and thereupon the defendant consented to a verdict for the plaintiff for $10 damages, with leave to except to said ruling of the court. Whereupon the court, *pro forma*, directed a verdict for the plaintiff. The defendant excepted.

*Abishia Stoddard* and *Field & Tyler*, for the defendant.

The defendant's unity of title and possession extinguished all former right of way. *Clements* v. *Lambert*, 1 Taunt., 205 ; *Whalley* v. *Thompson*, 1 B. &. P., 371; 3 Kent's Com., 423; Ang. on W. C., 55. It is settled in this state that a right of way from necessity does not exist independent of an express or implied grant. *Tracy* v. *Atherton et al.*, 35 Vt., 52. If a way exists by grant, it must be implied in the deed from the defendant to Ira

Baldwin, of December 13, 1847. Whether such a grant is to be implied or not must be gathered from the circumstances and acts of the parties *when the deed was executed and delivered.* The use cannot explain the grant. *Osburn* v. *Wise*, 7 C. & P., 761, (32 E. C. L. 859); *Rich* v. *Elliot*, 10 Vt., 211; *Smith* v. *Higbee*, 12 Vt., 93. There is nothing in the deed to indicate such a grant. It is in common form, and the boundaries are defined. Nothing was done by the parties, at the time of the execution and delivery of the deed, to indicate any grant not expressed in the deed. There is no ambiguity to be explained. No grant can be implied from necessity. The plaintiff has ample space in front of his mill, which is open to the highway.

Upon the question of prescriptive right in the plaintiff see 2 Green. Cruise on R. P., 26, 27, notes; *Dodge* v. *Stacy*, 39 Vt., 558; *Morse* v. *Ranno*, 32 Vt., 600.

*H. H. Wheeler* for the plaintiff.

The way to and from the mill door, over the land in front of the mill, in any direction that persons going to and from the mill pleased, was a way that would be appurtenant to the mill, and when the mill and its appurtenances were conveyed the way passed by the conveyance. *Emerson* v. *Wiley*, 10 Pick., 310; 1 Shep. Touch., 89; *James* v. *Plant*, 4 Ad. & E., 749; *Leonard* v. *White*, 7 Mass., 6; 2 Wash. Real Prop., 623, 624, 625; Ibid., 36, 16. The way was not lost by the unity of possession in the defendant. *Surrey* v. *Pigot*, Latch, 153; 1 Bos. & Pul., 374, n. The use of the way by the plaintiff and his grantors, and their customers, from 1847 to 1867, in the manner the plaintiff's evidence tended to show, gave him an absolute right to the easement. Angell on Adverse Enjoyment, 23, *et. seq.;* 2 Wash., 43, 48. The occupancy by the defendant, which his evidence tended to show was not sufficient to interrupt the acquisition of the easement by the plaintiff. Latrell's case, 4 Coke, 86; Coke Abr., 122; 2 Green. Ev., § 545; 2 Wash. R. P., 46; *Emerson* v. *Wiley*, 10 Pick., 310.

The opinion of the court was delivered by

STEELE, J.   The plaintiff claims to own an easement in the nature of a right of way on the west side of his mill over the defendant's land.   The defendant has erected a barn on this land which obstructs all passage on the west side of the mill.   This right of way is claimed by the plaintiff, first, by the force of his deed or grant, and, secondly, by prescription.

I.   As to the force of the grant.

1.   The plaintiff's grantor, Baldwin, bought this mill and appurtenances of the defendant.   At the time of the purchase the defendant owned all this territory west of the mill.   The deed, in terms, conveys the land only as far west as the west side of the mill.   If the defendant had himself owned no land west of the mill, but had owned an easement there in the land of another in the nature of a right of way for the uses of the mill, the right of way might have passed with the mill as *appurtenant* to it.   There would be no sound presumption that the defendant, when he sold the mill, intended to retain in himself an easement which would be valueless, except as appurtenant to the mill.   But owning the land as he did, his use of it in connection with the mill would not necessarily make it an appurtenance to the mill.   One can not be said to hold an easement in his own land.   The mere fact, therefore, that the defendant was accustomed to use the land west of the mill for mill purposes, does not give the plaintiff, having bought the mill without the land, the right so to use it.

2.   If the deed of the mill from the defendant to Baldwin had so bounded the purchase that Baldwin would have had no means of ingress and egress to and from his property, except over the defendant's land, a grant of a right of way across his land would be implied.   But in this case the deed, in terms, conveyed all the land on the north side or front of the mill, and between it and the street.   This is a sufficient means of ingress and egress, and the way which is claimed on the west side of the mill is a way of convenience and not of necessity.   The only value of it would be to make the mill *more* accessible from the highway.   It is not claimed that there has ever been any way used or needed by the west side to any point in the rear of the mill.   From these facts

we must conclude that no intention to make a grant of a right of way is to be implied from the necessity and situation of the property.

3. Conceding that the evidence tended to prove that there had been a right of way appurtenant to this mill over the defendant's land prior to the defendant's purchase of the mill, it ceased to exist when the title of the mill, and of the land west of it, were united in the defendant. If a right of way be appurtenant to close A upon close B, and both closes be united in the same person, the right of way, as well as all other subordinate rights and easements, is extinguished by the unity of possession. 3 Kent, 423, citing *Whalley* v. *Thompson*, 1 Bos. & Pul., 371. When, therefore, the defendant conveyed the mill to Baldwin, retaining the land west of it, Baldwin acquired no easement in the land west of it by virtue of such an easement having been owned by the defendant's grantor, for that easement was extinguished, and there was nothing in the situation of the property indicating that the parties intended to revive the way, especially in view of the fact that the door was upon the north side of the mill and not upon the west. The very object of the defendant's purchase of the mill may have been to rid himself of the incumbrance upon his land west of it. The case, as stated, does not clearly show that the ownership of the mill was ever separate from the ownership of the land west of it, until the defendant conveyed it to Baldwin. But assuming that this was so, it would not alter the case. We see then no ground upon which to imply a grant of the right of way from the force of the conveyance from the defendant to Baldwin, particularly in view of the fact that the property is not conveyed by name, but by definite metes and bounds.

We therefore hold that the ruling of the court, that a way passed by force of the deed, was erroneous.

II. We now come to the questions which arise under the plaintiff's claim, that he has acquired a right of way on the defendant's land, by prescription, since the two properties were severed in 1847.

1. The burden was upon the plaintiff to establish, by a fair balance of testimony, that he had acquired such a prescriptive

right. He was bound to show, affirmatively, an adverse continuous user for fifteen years, under a claim of ownership or as of right. In absence of any proof or circumstances indicating the contrary, it may do to assume that the use is adverse and under a claim of right. But where, as in this case, the nature of the use may leave it doubtful, the space over which the way is claimed being necessarily left open to the public for the convenience of the defendant's own mill, it is for the jury, and not the court, to say whether, upon the proof and circumstances, including the nature of the occupation and the situation of the property, the plaintiff has made out that his user has been under a claim of right to himself adverse to the defendant's title.

2. Again, the proof disclosed the fact that the defendant had several times obstructed the plaintiff's enjoyment of any way upon this land, by occupying it himself as a place of deposit for wood, lumber and carriages, so as to materially interrupt any continuous use of it by the plaintiff. Now, these interruptions by the defendant may have been merely casual, or even accompanied by acts recognizing a right in the plaintiff. If so, they would not prevent the plaintiff's use from ripening into a prescriptive right. On the other hand, they may have been in the exercise of the right of ownership on the part of the defendant, under his title. In that case, they would prevent the plaintiff's user from ripening into a prescriptive right. What is the *prima facie* presumption? Clearly not that the defendant's occupation of his own property was in recognition of a right which did not then exist in the plaintiff. On the contrary, the *prima facie* presumption is that the defendant's enjoyment of his own land was an exercise of his right to so enjoy it. This presumption may be rebutted by proof. The burden was, however, upon the plaintiff to rebut it. In other words, the burden was upon him to show a continuous or uninterrupted use for the requisite length of time. It was for the plaintiff to show that the interruptions by the defendant were consistent with the plaintiff's claim, and not for the defendant to show that they were inconsistent with it. The *pro forma* ruling of the county court seems to throw upon the defendant the burden of

the plaintiff. It assumes that the defendant's interruptions were insufficient, " unless the occupancy by the defendant, such as the jury should find from the evidence, had been in the exercise and assertion of a claim of right." They were sufficient unless the jury found that the defendant's occupancy was *not* made in the exercise of a right, but was merely casual, or in recognition of the plaintiff's supposed right.

The judgment of the county court is reversed, and cause remanded.