ROSWELL EARL *v.* SILAS L. GRIFFITH AND SILAS L. GRIFFITH *v.* ROSWELL EARL.*

*Trespass* Qua. Clau. *Title. Possession. New Trial.*

In trespass *qua. clau.* for entering, and cutting and carrying away timber, it appeared that in 1807, a strip of land five hundred rods wide was set off from the east side of Mount Tabor to one S., and that, in 1841, it was surveyed and allotted, and the lines and corners distinctly marked. In 1855, after several mesne conveyances, lot No. 16, which was in the west tier of lots in that grant, came by regular conveyance to the plaintiff. That lot was abutted on the west by lot No. 6 in the 10th range and lot No. 6 in the 11th range. Those lots were surveyed in 1817 or 1818, and in that survey the east line of those lots was carried so far eastward as to overlap the west line of said grant about thirty and a half rods, and it was on that part of lot No. 16 that was cut off by that survey that the defendant who had come into possession of the abutting lots, committed the alleged trespass. On the part of the plaintiff it appeared that in each of the years 1853–5, one G., who then held the title which afterwards came to plaintiff, entered upon different parts of the lot and cut considerable quantities of timber ; and that plaintiff also entered and cut considerable quantities of timber at several different times—the last time only seven or eight years before the trial. Defendant proved regular conveyance of lot No. 6 in the 10th range from one B., and through several mesne conveyances a final conveyance thereof to himself, but proved no title nor color of title in B. He also proved conveyance of the south half of lot No. 6 in the 11th range from one W. to T. and from T. to himself, but proved no title in W. It appeared on his part that in 1858 or 1859, T. cut timber on the south half of lot No. 6 in the 11th range, but it did not appear that he cut any on the *locus in quo.* It appeared also that about 1833 B. went onto the south-west corner of lot No. 6 in the 10th range, and there, and on the corners of other three lots, made an extensive clearing and erected buildings; but it did not appear that he ever cut any timber on the land in question. The boundaries of lot No. 16 were distinctly marked and easily traceable ever after the survey thereof. *Held,* that the actual possession of plaintiff and those under whom he claimed, who were the true title holders, effectually interrupted the constructive possession claimed on the part of defendant, and that the action would lie.

Under circumstances of the case, *q. v.*, petition for new trial on the ground of newly-discovered evidence, denied, for that the evidence would have been insufficient to work a different result, and for that it was not sought for with sufficient diligence before trial.

TRESPASS *qua. clau.* for entering, and cutting and carrying away timber, &c., from lot No. 16 of the Steel-clip grant, in Mount Tabor. Plea, general issue, and trial by the court, September Term, 1877, Ross, J., presiding. Exceptions and a peti-

*Heard at the January Term, 1878.

tion for a new trial were filed by the defendant, and heard together at this term.

It appeared from the town records that on October 1, 1807, a strip of land five hundred rods in width, afterwards known as the Steele-clip grant, was set off from the east side of the town to Daniel Steele. It did not appear that that grant was ever run out by metes and bounds until it was run out into lots in 1841 by one Hammond. It appeared that the lot in question was in the westerly line of lots in that grant ; and that it was abutted on the west in part by lot No. 6 in the 10th range, and in part by lot No. 6 in the 11th range, which were surveyed in 1817, or 1818, their lines and corners established and plainly marked, and ever afterwards kept up. In surveying the last-named lots, the east line thereof was carried so far eastward as not to leave five hundred rods of said grant, so that when Hammond made his survey as aforesaid the west line of the lot in question overlapped the east line of those lots, a distance of about thirty and a half rods. It is as to the rights of parties to that part of lot No. 16 that question here arises.

The plaintiff introduced in evidence a warranty deed of June 27, 1848, of the lot in question, from Stephen P. Steele and others, who claimed to be the heirs of Daniel Steele, to R. and S. Smith ; a like deed of May 13, 1850, from the Smiths to Henry E. Goodell ; a like deed of June 8, 1853, from said Goodell to Horatio N. Goodell ; and a like deed of December 31, 1855, from Horatio N. Goodell to the plaintiff. The plaintiff gave no evidence of any actual occupation of said lot until Henry E. Goodell obtained his deed ; but it appeared that while said Goodell owned it, he entered yearly upon different parts of the lot and cut and took away three or four hundred spruce logs ; and that after the plaintiff obtained title he entered upon the lot at three or four different times—the last time, seven or eight years before the trial—and cut a considerable quantity of timber. Those acts constituted all of the actual occupancy shown under the plaintiff's title. The defendant introduced in evidence a deed of November 1, 1852, of lot No. 6 in the 10th range, from the administrator of Silas Barrett to O. A. Congdon ; a deed of Septem-

ber 8, 1866, from the administrator of said Congdon to Charles H. Congdon ; a warranty deed of the same date from Charles H. Congdon to the defendant; a quit-claim deed of March 8, 1857, of the south half of lot No. 6 in the 11th range from Calvin White to P. W. Thompson ; and a like deed of October 21, 1868, from Thompson to the defendant. The defendant showed that in 1858 or 1859 Thompson cut a considerable quantity of spruce timber on the south half of lot No. 6 in the 11th range, but it did not appear that he cut any on the disputed strip. No other occupation of that lot was shown. The defendant further showed that about 1833, Barrett went onto the south west corner of lot No. 6 in the 10th range, made a clearing, and erected buildings on the corner of that lot and of the three other lots the corners of which came in at that point, and between that time and 1852 cleared a farm of about one hundred acres, which was in part on each of said four lots. But it did not appear that he ever cut any timber on the disputed tract, nor that he ever had any deed on record giving him color of title to lot No. 6 in the 10th range. Occupation of that farm was continued by Congdon and his grantees from 1852 to the time of the bringing of this action. O. A. Congdon cut a considerable quantity of timber on the land in question about 1853–5, but without the knowledge of Goodell, who then held the title ; and Charles H. Congdon cut some there in 1865 or 1866. These acts constituted all the occupancy of said lots and of the land in question on the part of the defendant prior to the trespass complained of ; and during the time of their commission the two lines were so distinctly marked as to be easily traceable, and the corners were to be easily found. It appeared that the defendant began cutting on the land in question in December, 1872, and cut and took away spruce timber of the value, with interest, of $305. It appeared also that in 1873 the defendant bought a tract of land in the Steele-clip grant south of lot No. 16, and by mistake ran the line on to that lot, and, in 1874–5, encroached upon said lot from that side, and cut timber of the value of $110, for which he acknowledged his liability. On the foregoing facts the court rendered judgment for the plaintiff for both sums ; to which the defendant excepted.

53

The petition for a new trial alleged that when the petitioner purchased the land south of the lot in question, the lines were pointed out to him by his vendor, and, as so pointed out, included the place where the alleged trespass was committed; that his deed of that land referred to the Hammond survey; that before the trial thorough search was made in the town records for the record of said survey, but that by reason of defective indexing it was not found; that it had since been found by accident, and that thereby and by means of a re-survey made with reference thereto, it had appeared that the lots in the Hammond survey were each about ten rods shorter from north to south than as pointed out to the petitioner at the time of his purchase, and that the place of the alleged trespass was not on the land so purchased by the petitioner; that the petitioner, to show claim on the part of Barrett to the whole of lot No. 6 in the 10th range, also made thorough search for record of Barrett's title, but found none; that he was thus not able to show color of title in Barrett, or any claim by him to the whole of that lot, nor any claim by any one until Barrett's administrator conveyed as aforesaid; that after the trial the petitioner's attorney found a record under date of 1828 of a vendue sale of said lot by a tax-collector to one Daniel Lapham, and under date of 1830, record of a mortgage thereof from Barrett to said Lapham, wherein Barrett mortgaged said lot, describing it as " lot 6 in the 10th range "; that it thereby appeared that Barrett's occupancy was with claim to the whole lot; and that there was nothing in the index to the records that gave any clue by which said mortgage could be connected with said lot or said collector's deed could be connected with any former proprietor. It also alleged that the petitioner had been able to trace an ownership possession of the south half of lot No. 6 in the 11th range to one William Andrus in 1834, and continuous ownership and possession by him and his grantees, adverse to the plaintiff, till about 1860, since when the defendant and his grantee had occupied as stated in the exceptions. The allegations of the petition were supported by depositions. Depositions were also taken by the petitionee tending to show that the records of the survey, the mortgage, &c., were correctly indexed, and might have been found on reasonable examination.

*W. G. Veazey, J. C. Baker,* and *J. B. Phelps,* for the defendant and petitioner.

The court erred in rendering judgment for the damages to land included in lot No. 6 in the 10th range. Barrett gained title to the disputed piece included in that lot by constructive possession. The lot was surveyed and its lines and corners established and plainly marked in 1817 or 1818, and they have ever since been kept up. Barrett's entry in 1833 and occupancy thereafter, was under such circumstances as to give him constructive possession of the entire lot, as it was surveyed and marked out. *Hodges* v. *Eddy,* 38 Vt. 327, 346; *Buck* v. *Squiers,* 23 Vt. 498. But at all events, the defendant has title by the constructive possession of O. A. Congdon and his grantees. *Jackson* v. *Leonard,* 9 Cow. 653; *Webb* v. *Richardson,* 42 Vt. 465.

The newly-discovered evidence shows that the occupancy of Barrett was under a claim to lot No. 6 in the 10th range to its whole extent, according to its recognized and well-marked bounds. As to lot No. 6 in the 11th range, the newly-discovered evidence shows conclusively that the plaintiff has no title; and as he must recover, if at all, on the strength of his own title, he must fail as to this part also. The evidence is therefore material, and would change the judgment. *Crowell* v. *Bebee,* 10 Vt. 33; *Ralph* v. *Bayley,* 11 Vt. 521; *Jakeway* v. *Barrett,* 38 Vt. 316; *Hodges* v. *Eddy, supra.*

Due diligence was used in searching for the evidence, and the evidence is not cumulative. *Gilman* v. *Nichols,* 42 Vt. 313; 3 Grah. & Wat. New Tr. 1021, *et seq.*

*Prout & Walker,* for the plaintiff and petitionee.

There cannot be two contemporaneous constructive possessions. There can be no constructive possession whatever without color of title; and this must be proved. When an entry is made under color of title, the land may be held by a constructive possession; but if made under a simple claim of title, the possession must be actual. Tyler Eject. 893, 904, 911; Angell Lim. 395, 401; *Chandler* v. *Spear,* 22 Vt. 388; *Hodges* v. *Eddy,* 38 Vt. 327, 344. Therefore the clearing made by Barrett without color of title on

record, was not constructive possession of anything. As to lot No. 6 in the 11th range, there is nothing in the case conflicting with the plaintiff's title.

As the alleged newly-discovered evidence might have been found on reasonable search, a new trial will not be granted. *Morgan* v. *Houston*, 25 Vt. 570. The evidence would not vary the result. *Burr* v. *Palmer*, 23 Vt. 244; *Lindsey* v. *Danville*, 45 Vt. 72. The mortgage and deed might show claim of title, but not color of title. To enable defendant to assert constructive possession in Barrett, he must show a conveyance of record to him. Nor is the new chain of title alleged in respect to lot No. 6, range 11, decisive of any issue. There is no privity between defendant and the Andrus claim. Tyler Eject. 912 ; Angell Lim. 418. There is no proof of any occupancy under that claim ; and whatever there ever was of it has long since been extinguished by plaintiff's title.

The opinion of the court was delivered by

BARRETT, J. There is no question as to the location of lot No. 16 of the Steele-clip grant, nor as to the validity of the plaintiff's title to it, except as affected by the alleged adverse occupancy and possession. The title drew to it possession for every purpose, except immunity against the effect of an actual adverse possession, continued for fifteen years. The lot was laid out, and its boundaries distinctly marked, so as to be easily traceable, and the corners could be easily found, during all the time in which the alleged acts of adverse occupancy were occurring. While Henry E. Goodell was owner, between May 13, 1850, and June 8, 1853, he yearly cut and took from various parts of the lot large quantities of timber logs. After the plaintiff became owner, up to seven or eight years ago, he cut and took lumber from the lot three or four times. These were acts of possession operating upon the whole lot as actual possession ; and having been done in connection with, and under, a valid paper title, they interrupted any merely constructive possession claimed and attempted to be shown in behalf of the defendant. It is needless, therefore, to give consideration to what is shown or claimed as to the building

of the house on the south west corner of lot No. 6, range 10, and the working up of the farm around it, on the corners of the four lots, by Silas Barrett. It is only claimed that that operated a constructive possession of the part of lot No. 16, embraced within the boundaries of said lot No. 6,—that encroachment of No. 6, on said No. 16, being without right. Without remark upon the validity of such claim, it is sufficient for this case to say, that any constructive possession—such as is claimed in behalf of the defendant in this case, would be effectually interrupted by any actual possession of the true owner of the title. This is conclusive in the cause, and we refrain from further discussion. Judgment affirmed.

As to the petition for new trial it is denied for two reasons : First, the newly-discovered evidence, though perhaps pertinent as tending to show *claim* of right, would be wholly ineffectual towards a different result, in view of the other established facts in the case ; secondly, there appears to have been nothing to prevent or impede the hearing of the evidence on the trial in the County Court, except that the party and his attorneys did not think of it as being important, till after the trial was over. The petition is denied with costs.