STATE *v.* FOSTER W. G. MAGUIRE.

May Term, 1927.

Present:   WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed October 5, 1927.

*Criminal Law—Right to Reasonable Opportunity To Obtain Witnesses—Motion To Adjourn Because of Absence of Material Witness—G. L. 1258—Insufficiency of Affidavit Filed with Motion To Adjourn Because of Absence of Material Witness—Abuse of Discretion—Sufficiency of Health of Child To Attend School under Evidence Jury Question —Investigation of Child's Condition of Health under G. L. 1260—Immaterial Evidence—Irresponsive Answer Excludable in Court's Discretion—Insufficiency in Offer of Evidence—Exclusion of Cumulative Evidence—Exception to Charge Must Point Out Error—Review by Supreme Court of Discretionary Rulings—New Trial—When Evidence May Not Be Considered "Newly Discovered"—Effect on Consideration of Motion for New Trial When Petitioner Has Right To Expect Verdict—Sufficiency of Facts To Justify New Trial.*

1.  A person charged with crime is entitled to a reasonable opportunity to procure and present witnesses necessary to his defense, including a postponement of his trial, if need be.

2.  Motion by respondent for adjournment on ground of absence from State of necessary witness, must disclose not only absence of witness, but, among other things, materiality of his testimony.

3.  In prosecution under G. L. 1258, for failure of person having control of child of school age to send child to school as required by law, where affidavit, supporting motion for adjournment on account of absence from State of material witness, disclosed that such witness, a physician, would testify that he had treated child between certain dates, and that during that period child was kept out of school by his advice, but failed to show that witness would testify as to child's condition on date on which prosecution was based, *held* that trial court did not abuse its discretion in overruling motion.

4. In such prosecution, evidence on question of child's suitable condition of health to attend school on date he was alleged to have been absent, *held* for jury.

5. In such prosecution, where evidence showed that there had been no representation to superintendent of schools where child should attend school as to child's physical or mental inability to attend school on date he was alleged to have been absent, *held* that superintendent was not required under G. L. 1260 to investigate concerning child's condition before prosecution was instituted.

6. In such prosecution, evidence that on last day on which child was in school, in being punished by teacher he was exposed to drafts from which he could catch cold or get a chill, offered to explain sudden appearance of his disease on that day, and as bearing upon his condition when he reached home and was kept there by his mother, *held* properly excluded as not relating to day in issue, with no offer to connect it therewith, and as speculative in character.

7. When answer being given by witness is not responsive to question, court may, in its discretion, refuse to permit witness to proceed.

8. In prosecution under G. L. 1258 for failure of person having control of child of school age to send child to school as required by law, offer to show doctor's advice as to sending child to school on date other than one when he was alleged to have been absent, without indicating what witness was expected to say concerning advice covering that day, *held* insufficient to apprise court of materiality of evidence.

9. In making an offer of evidence, evidentiary relation between facts covered by offer and issue being tried must be pointed out.

10. In prosecution under G. L. 1258 for failure of person having control of child of school age to send child to school as required by law, where State in respondent's cross-examination had asked several questions evidently designed to show that reason for keeping child out of school was because respondent's wife had not been employed as teacher therein, which respondent denied, testimony of wife that she had applied for position as teacher, but withdrew application when she learned another teacher had been engaged, *held* properly excluded, since it added nothing to testimony previously introduced.

11. Exception to charge of court on subject of reasonable doubt, which gives no grounds and points out no claimed error, will not be considered, since exception to charge must reasonably indicate to trial court fault found with charge, and not leave court in ignorance of precise ground upon which it is predicated.

12. Supreme Court, in reviewing a discretionary ruling of lower court, cannot predicate error upon a situation not called to attention of trial court, and not, so far as appears, within its knowledge.

13. Determination of question whether new trial should be granted is not limited to ground assigned, but lies in legal or judicial discretion of Supreme Court, and statute vesting power in it is given a broad scope and liberal construction in view of its remedial nature.

14. Want of diligence on part of petitioner for new trial, or his counsel, affecting grounds for new trial, will defeat petition.

15. Where evidence not presented at original trial is relied upon as basis of application for new trial, evidence must be shown to be newly discovered within meaning of law.

16. Where petitioner for new trial had knowledge or means of knowledge before trial as to what testimony witness could give on material issue, such testimony cannot be considered newly discovered, in any legal sense.

17. In considering petition for new trial, Supreme Court must have regard to state of case as it stood upon evidence on trial, and, if upon the main facts in issue, evidence stands so well that party may well claim and expect a verdict, such party in asking for new trial deserves a different consideration from one who had not been active and efficient in producing such a state of evidence in his own favor.

18. Where evidence, in prosecution under G. L. 1258 for failure of person having control of child of school age to send child to school as required by law, was close upon issue of child's physical fitness to attend school at time he was alleged to have been absent, *held* that respondent's petition for new trial, based upon failure of court to adjourn to permit attendance of witness on this issue, whose evidence was not merely cumulative but of such a nature to as to render probable a different result on another trial, was entitled to favorable consideration, facts showing no lack of diligence by respondent.

INFORMATION under G. L. 1258 charging respondent having control of child of school age with failure to send child to school as required by law. Plea, not guilty. Trial by jury at the June Term, 1926, Orange County, *Sherburne,* J., presiding. Verdict, guilty, and sentence thereon. The respondent excepted, and also petitioned for a new trial. The opinion states the case. *Judgment and sentence vacated. Verdict set aside. Petition granted and cause remanded for a new trial.*

*John W. Gordon* for the respondent.

*Hugh W. Hastings,* State's attorney, for the State.

MOULTON, J.  It is charged against the respondent that having the control of Robert Maguire, a child of school age, he neglected to send such child to school as required by law, under the provisions of G. L. 1258.. After a trial by jury he was found guilty and brings this case to this Court upon exceptions and by a petition for a new trial. It was conceded that the child was not sent to school upon the day claimed by the State, February 8, 1926. The defense was that he was ill and unable to attend school.

Before the trial commenced the respondent moved for adjournment upon the ground that a certain witness, Dr. E. E. Ellis, was absent from the State, but was expected to return and to be able to attend Court in a few days. The motion was overruled, the respondent excepted, and now claims that the overruling of the motion was an abuse of direction. The motion was supported by the affidavit of the respondent, and in it the affiant stated that Robert Maguire was taken sick with the "flu" on the 26th day of December, 1925; that Dr. Ellis, who was a regular practicing physician, was called to attend, and continued to treat the boy up to and including February 6, 1926; that though still sick and under the doctor's treatment he sent Robert to school on the 26th day of January, 1926, but the child grew worse and was taken out of school at recess on the morning of that date; that he continued under the treatment of Dr. Ellis up to and including the 6th day of February, 1926, and that the doctor's testimony would tend to show (to quote from the affidavit) "that the boy's health from the 26th day of December, 1925, to and including the 6th day of February, 1926,

was such that said boy was unable to attend school and that the boy was kept out of school in accordance with his suggestions and advice during the period aforesaid.'' The affidavit also stated the unexpected absence of Dr. Ellis, his anticipated return, and ability to attend court as a witness in the course of a few days.

[1-3] It is true, as urged by the respondent, that a person charged with crime is entitled to a reasonable opportunity to procure and present the witnesses necessary to his defense, including a postponement of his trial, if need be. *State* v. *Pierce*, 88 Vt. 277, 280, 92 Atl. 218. But the motion must disclose not only the absence of the witness, but, among other things, the materiality of his testimony. *State* v. *Pierce*, above cited. The affidavit falls short in this respect. It discloses that Dr. Ellis treated the child at intervals from December 26, 1925, up to and including February 6, 1926, and that during that period of time the child was kept out of school by the doctor's advice; but it is silent upon the child's condition upon the day in question, February 8, 1926, and there is no intimation contained in it that the doctor would be able to testify as to the child's condition upon the latter date. Under the circumstances, an abuse of discretion in overruling the motion does not appear.

[4] At the close of the State's case the respondent moved for a directed verdict of acquittal upon the grounds that there was no evidence tending to show that the boy, Robert Maguire, was in a suitable condition of health to attend school on February 8, 1926, and that the superintendent or anyone in his behalf made no investigation as required by law to determine whether the boy was in fit and suitable condition to attend school on that date. The motion was overruled and the respondent excepted. At the close of all the evidence the respondent again moved for a directed verdict, stating that he then renewed the motion made at the close of the State's case, and said further that on the uncontradicted evidence the boy's condition was such that it justified the parents in keeping him out of school at the time charged in the information. The motion was again overruled, and the respondent excepted.

Upon the question of the fitness of the child to be in school on the day claimed, the truant officer of the town, Mr. Ralph, testified that after having received from Mrs. Emery, the teacher of the school, a notice of truancy, as required by the statute,

he communicated with Mr. Jamieson, the superintendent of schools of the district, with regard to the matter; that he prepared a notice directed to the respondent, as required by statute, that the child was absent from school without legal excuse and to cause such child regularly to attend thereafter; that after receiving the notice from the teacher which was on January 29, 1926, and before causing the delivery of the notice to the respondent, on February 6, 1926, he saw the child every day or so around the buildings of his parents and in front of the house and playing with his brother, and there was nothing that he saw that led him to believe that the boy was sick. The district superintendent, Mr. Jamieson, testified that he called at the respondent's house in January, and that the child appeared as normal as any child.

With this testimony in the case it cannot be said that there was nothing for the jury upon this point. The weight to be given it was for the jury to decide. There was no error in overruling the motion upon this ground.

[5]   The respondent insists that since neither the school superintendent nor anyone in his behalf made any investigation as to whether the boy was in suitable condition to attend school on the date in question the respondent was entitled to a directed verdict of acquittal. G. L. 1260 reads as follows:

"If a person having the control of a pupil represents to the superintendent having the supervision of the school which such child should attend, that such child is physically or mentally unable to attend school, and if said superintendent has reason to believe that such representation is untrue, he shall investigate and, if he deems it advisable, shall request the health officer of the town or a competent physician to examine such child, but if there is a medical inspector in the district in which such school is located, said superintendent shall request such inspector to examine such child. Said officer, physician or inspector shall examine the child and make a report of his condition to said superintendent; and said superintendent shall, if the child is found mentally or physically unable to attend school, notify the teacher of such school and the truant officer of the town of such fact. The expense of such examination shall be paid from the school funds of the town district."

31

It is admitted that the district superintendent requested no examination to be made by the health officer or medical inspector. But by the terms of the statute this duty exists only when the person having control of the pupil represents to the superintendent that such child is physically or mentally unable to attend school, and when such superintendent has reason to believe that such representation is untrue, and deems an examination advisable. Mrs. Maguire testified that she saw the district superintendent during the month of November, 1925, and that this was the last time she saw him before Robert was taken out of school, and that she "mentioned" Robert's physical condition to him "somewhat," on two occasions. Three written communications from the respondent to the superintendent were received in evidence. The first of them dated January 28, 1926, stated as follows: "We have decided to take Robert out of school for good. We don't feel any more satisfied with the conditions at school than we did when we discussed affairs before Christmas * * * * We feel that Robert will progress far better in every way by studying at home." The second letter dated February 2, 1926, referring to the occasion of January 26, when the child left school at recess in the morning, stated: "Robert had permission to come home at recess, he comes home every recess in order to get a drink of water. Drinking water is not supplied at the school house. He has been under the doctor's care for the past four weeks. He was in no condition to return to school when he come home Tuesday morning at recess. He is recovering from an attack of the flu." The third letter dated February 8, 1926, stated: "If Mrs. Emery and the school board had been one-third as courteous and kind as you have been, there would never have been one iota of trouble." It will be observed that in only one of these letters is the illness of Robert mentioned, and that one refers to the occasion of January 26. There is no representation anywhere of physical or mental inability to attend school further than as applied to this one occasion, and therefore no duty was upon the superintendent to request an examination. There was no error in overruling the motion.

The respondent excepted to the admission in evidence of two letters written by the district superintendent to the respondent in reply to two of the letters received from the latter. It is urged that these letters were immaterial, and that what the superintendent said therein was inadmissible since it did not

explain the respondent's letters. After an examination of these exhibits it is enough to say that the error, if any, in admitting them was harmless and could not possibly have prejudiced the respondent.

[6] The respondent called as a witness one of the pupils in the school, and offered to show that on the day on which Robert was taken out of school the last time (which, as has been seen, was January 26), the teacher caused him, by way of punishment, to stand a little distance from the open door, thus exposing him to drafts by which he would catch cold or get a chill. The purpose was stated to be to show in part the sudden appearance of his disease on that day, and as bearing upon his condition when he reached home, and his mother kept him there. The evidence was properly excluded. It did not relate to the day in issue, and no offer was made to connect it with that day, and it was speculative in character.

The respondent testified to the visits of the doctor to Robert. He was asked on direct examination: "What the treatment was the doctor gave him there in January?" Objection was made but the question was allowed, and repeated thus: "As far as you can tell the treatment, go on." He answered: "Well, I can't tell you exactly. He was there two or three times, and after the first week, I asked him if we should let him go to school Monday, and the doctor said * * * *" An objection was made at this point and respondent's counsel said: "I think we have a right to show the doctor's advice on this matter." The testimony was excluded, and the respondent's counsel said: "Then I would like an exception if the court excludes the advice the doctor gave him not to go to school."

[7-9] Here was no error. In the first place the answer was not responsive to the question, and for that reason alone, it was proper for the court, in its discretion, to refuse to permit the witness to proceed. *Sanders* v. *Burnham,* 91 Vt. 480, 483, 100 Atl. 905; *Symes* v. *Fletcher,* 95 Vt. 431, 438, 439, 115 Atl. 502; *Berkley* v. *Burlington Cadillac Co.,* 99 Vt. 227, 232, 131 Atl. 16. In the second place, the offer was not sufficient to apprise the court of the materiality of the evidence. The visit at which the advice was given was about the middle of January. The conversation between the respondent and the doctor related to the advisability of sending Robert to school the following Monday. The offer was to show the doctor's advice on this mat-

ter, and what, if anything, the witness was expected to say concerning any advice covering February 8 was not pointed out. In making an offer of evidence, the evidentiary relation between the facts covered by the offer and the issue being tried must be pointed out. *Hambleton* v. *U. Aja Granite Co.,* 96 Vt. 199, 207, 118 Atl. 878.

[10]   On cross-examination of the respondent, the State asked several questions evidently designed to show that the reason for taking Robert out of school was that the respondent was dissatisfied with the school because his wife had not been employed as a teacher therein, and not because of any illness of the child.   The respondent later offered to show by Mrs. Maguire that although she had applied for the position of teacher she withdrew her application when she was informed that another teacher had been engaged.   To the exclusion of this evidence the respondent excepted.   The exclusion was proper.   The respondent had denied any dissatisfaction because his wife was not the teacher, and the offered evidence of Mrs. Maguire added nothing to the testimony previously introduced.

[11]   The respondent excepted to the charge of the court upon the subject of reasonable doubt.   No grounds for the exception were given and the claimed error was not pointed out, and so it is not considered.   It did not reasonably indicate to the trial court the fault found with the charge, and was not appropriate in that it left the court in ignorance of the precise ground upon which it was predicated.   *Morgan* v. *Gould,* 96 Vt. 275, 279, 119 Atl. 517; *Eastern States, etc., League* v. *Vail's Estate,* 97 Vt. 495, 514, 124 Atl. 568, 38 A. L. R. 845.

The respondent excepted to the failure of the court to charge that since there had been no investigation as to the health of the child by a doctor or health officer or other person designated in the statute the respondent was entitled to an acquittal.   What we have already said in disposing of the respondent's exception to the denial of his motion for a directed verdict is applicable here.

*Judgment that there is no error, and that the respondent take nothing by his exceptions.*

## On Petition for New Trial.

The respondent has brought a petition for a new trial. The only ground upon which it is predicated is that the trial court abused its discretion in refusing to adjourn the case for a few days thereby depriving him of the testimony of Dr. Ellis. A supporting affidavit by the doctor, after detailing the treatment given Robert, states: ''In my opinion the boy was not in condition to go to school the 6th day of February, 1926, nor could he be fit to attend school on the 7th day of February, 1926, unless his condition was improved. If there was more swelling around the ear or face on the 8th day of February, 1926, and he still suffered earache, it would indicate that his condition had not improved.'' In this respect the affidavit goes farther than the one filed by the respondent in support of his motion for an adjournment, because as we have seen, that affidavit stated only that the doctor would testify that Robert was not in condition to attend school on February 6. The materiality of the evidence disclosed by the second affidavit is apparent because the transcript shows that the respondent introduced evidence tending to show that Robert's condition on February 8 had not improved, and that his face was then so swollen as it was on the 6th.

[12] But the discretion of the trial court in denying the motion for adjournment was necessarily exercised in view of the situation then presented to it. We have already held that no abuse of discretion appears. What might be the result if the matters contained in the second affidavit had been included in the one filed in support of the motion, we have no occasion to consider, because we cannot, in reviewing a discretionary ruling, predicate error upon a situation not called to the attention of the trial court, and not, so far as appears, within its knowledge.

[13-15] While, as has been said, this petition is based upon an alleged abuse of discretion in refusing the adjournment, in considering it we do not confine ourselves to this ground alone. The determination of the question whether a new trial should be granted lies in the legal or judicial discretion of this court, and the statute vesting the power in it is given a broad scope and liberal construction in view of its remedial nature. *Webb* v. *State,* 90 Vt. 65, 66, 67, 96 Atl. 599; *Walsh* v. *Cole,* 97 Vt. 459, 460, 123 Atl. 850, 851. ''Every petition for a new trial, brought conformably to law, must fail or prevail according to the

strength of the appeal it makes to the judgment and conscience of the Court.'' *In re Ketcham*, 92 Vt. 280, 287, 102 Atl. 1032.

Nevertheless, this Court has fixed certain well-defined boundaries to its powers. Among them are the rules that want of diligence on the part of the petitioner or his counsel affecting the grounds for new trial will defeat the petition (*Webb* v. *State, supra; Walsh* v. *Cole, supra*), and that, where evidence not presented at the trial is relied upon, it must be shown to be newly discovered within the meaning of the law. *Capital Garage Co.* v. *Powell*, 97 Vt. 328, 330, 123 Atl. 200; *Madden* v. *Spaulding*, 94 Vt. 290, 293, 110 Atl. 220; *Hemmenway* v. *Lincoln*, 82 Vt. 465, 466, 467, 73 Atl. 1073.

[16]   The instant petition is verified by oath, and in it the petitioner says that he saw Dr. Ellis three days before the trial commenced, at which time the latter informed him of his intended absence from the State and his inability to attend as a witness until a later day. No subpoena was served upon the doctor, but this is explained by saying that he was obliged to go to Boston with a patient suffering with a severe illness. The petitioner states as follows: ''I had relied upon the said Dr. Ellis as one of my principal witnesses to show that said Robert was unable to attend school from the 6th day of February, 1926, to the 8th day of February, 1926, and for some days hereafter.'' It is apparent, therefore, that the petitioner knew, before the trial, what testimony the doctor could give as to February 8, or could have easily obtained such knowledge. Since he had such knowledge or means of information, the testimony cannot be considered to be newly discovered, in any legal sense. *Capital Garage Co:* v. *Powell, supra; Madden* v. *Spaulding, supra; Willard* v. *Norcross*, 86 Vt. 426, 444, 85 Atl. 904; *Fitzpatrick* v. *Taber*, 100 Vt. 82, 135 Atl. 11, 12; *Morgan* v. *Houston*, 25 Vt. 570, 572. Indeed, no claim to this effect is made, either in the petition or in the brief filed in support of it.

[17]   But this alone is not decisive of the question, for, as was said, in *Gilman* v. *Nichols*, 42 Vt. 313, 315; ''It is the duty of the court to have regard to the state of the case as it stood upon the evidence on the trial. If, upon the main facts in issue, the evidence stands so well that a party may well claim and expect a verdict, such party, in asking for a new trial, would deserve a different consideration from one who had not been

active and efficient in producing such a state of the evidence in his own favor.''

An examination of the transcript shows that evidence as to the child's condition on February 8 was given by the respondent, Mrs. Maguire and Walter T. Holden, who was then employed by the respondent. These witnesses testified that Robert's face was swollen on that day to the same extent as on February 6. The respondent and Mrs. Maguire further testified that he had sores in his mouth and had difficulty in sleeping. Dr. Archambault, who was called to attend the boy about the first of March, testified that on examination he found albumen and phosphate in his urine, and that his diagnosis was general debility, and was the natural result of the grippe. Basing his opinion upon the examination and the testimony of the three witnesses above named, the doctor said that he did not think Robert was in fit condition to go to school on February 8.

The countervailing evidence upon this point was confined to the testimony of the truant officer and district superintendent, which has been mentioned in connection with the question raised by respondent's motion for a directed verdict; and such inferences as might be drawn from the failure of the respondent to make any claim that Robert was ill, from the fact that Robert played out of doors, and from the action of his parents in taking him, on the evening of February 9, to a meeting of the creamery company in North Randolph.

[18]   So it appears that the case on this issue was a close one. The evidence of Dr. Ellis is not merely cumulative, and, in our opinion, is of such a nature as to render it reasonably probable that a different result would follow on another trial. Under the circumstances, we do not think that the respondent is chargeable with lack of diligence, and the petition is entitled to favorable consideration. *Gilman* v. *Nichols*, 42 Vt. 313, 315, and *Fleming* v. *State*, 95 Vt. 154, 156, 157, 113 Atl. 783, are sufficient authority for granting a new trial in this case.

*Judgment and sentence vacated. Verdict set aside. Petition granted and cause remanded for a new trial.*