Victor D'Orazio et ux. *v.* Benjamin Pashby et al.

January Term, 1930.

Present: Powers, C. J., Slack, Moulton, Willcox, and Thompson, JJ.

Opinion filed May 7, 1930.

482

*J. A. McNamara* for the defendants.

*A. Pearley Feen* for the plaintiffs.

THOMPSON, J. This is an action of tort to recover damages for destroying a fence on the plaintiffs' land on St. Paul Street in the city of Burlington. The real controversy is over the location of the boundary line between the plaintiffs' lot and the lot owned by defendant Benjamin Pashby, and a certain prescriptive right claimed by said Benjamin Pashby in a driveway.

The plaintiffs' lot was conveyed to them by David J. Leonard and Henry H. Rierden by their warranty deed dated April 1, 1926, and is described in said deed as "Lot No. 14 as laid down on a plan of land of O'Neil, McSweeney and Andrews, which plan is of record in Vol. 42 at page 552 of the Land Records of the city of Burlington. Said land is situated on the easterly side of St. Paul Street, the house thereon being known and numbered 410 on said street." Said deed and a tracing of said plan were put in evidence by the plaintiffs and are marked, the former as "Exhibit 4," and the latter as "Exhibit 2."

It appears from the plan, Exhibit 2, that adjoining lot 14 and northerly of it is lot 13 which is owned by defendant Benjamin Pashby, and had been for a number of years prior to the purchase of lot 14 by the plaintiffs.

The dividing line between these two lots, the location of which is in dispute, extends easterly from the easterly boundary of St. Paul Street. The plaintiffs' evidence tended to show that some days before this suit was brought they erected a fence about one foot southerly from where they then and previously understood the true dividing line to be, they having then recently, for the purpose of establishing the northerly line of their property, caused a survey thereof to be made by H. M. McIntosh, a civil engineer residing in the city of Burlington; that after this fence had been erected six or seven days it was torn down by the defendants, and that while so doing they (de-

fendants) were on the southerly side of the fence and entirely on lot 14, the plaintiffs' property. This destruction of the fence by the defendants was followed by the bringing of this suit.

With other evidence introduced by the plaintiffs tending so to show, the McIntosh survey, testified to by the surveyor, showed the true dividing line between lots 13 and 14 to be about one foot northerly of where said fence was erected by plaintiffs and torn down by defendants. The latter asserted the true location of that line to be five or six feet southerly of the line shown by the survey. Defendants also sought at the trial in the court below to claim ownership of this strip of land by virtue of prescription, based upon so-called usage for a period of twenty-nine years, and on acquiescence between the grantors of the respective parties for a period of twenty-four to twenty-six years. The plaintiffs claimed title to the strip of land under the warranty deed before mentioned, and denied any prescriptive rights in defendants. The jury returned a verdict for plaintiffs.

At the close of plaintiffs' opening evidence, defendants moved for a directed verdict. The motion was overruled, and exception noted. Thereupon defendants introduced evidence in defense of the action, but did not renew their motion at the close of all the evidence in the case. By so introducing evidence, the defendants waived their exception previously noted to the overruling of their motion. *Paine* v. *Webster*, 64 Vt. 105, 23 Atl. 615; *Swerdferger* v. *Hopkins*, 67 Vt. 136, 31 Atl. 153.

After verdict and before judgment, the defendants moved that the verdict be set aside and a new trial granted on the ground that there was no evidence to support the verdict. Thereupon the case was entered with the court. The questions presented by the motion having been heard and considered, the court, on November 26, 1928, denied the motion, to which denial the defendants took and were allowed an exception.

The defendants claim that the burden was on the plaintiffs to show legal title to and *actual* possession of the land in question to maintain the action, and they failed to do it. It is conceded that the plaintiffs own lot 14. The description of that lot by reference to its number on the plan is a description in its legal effect according to the lines of the lot as surveyed and established in the original division shown by the

recorded plan, and is just as definite, though not as particular, as it would be if the lines were given. *Spiller* v. *Scribner*, 36 Vt. 245, 247; *Silsby & Co.* v. *Kinsley*, 89 Vt. 263, 269, 95 Atl. 634. The plaintiffs were occupying lot 14 under their deed, and they are presumed to have been in possession of the whole lot as shown on said plan (*Webb* v. *Richardson*, 42 Vt. 465, 475); and, as their evidence tended to show that the land in controversy is in lot 14 as shown on said plan, they had sufficient title and possession to maintain their action. *Fullam* v. *Foster*, 68 Vt. 590, 596, 35 Atl. 484; *Huntley* v. *Houghton*, 85 Vt. 200, 204, 81 Atl. 452.

The defendants' evidence tended to show that the strip of land in controversy was used as a driveway. They claim under their motion to set aside the verdict that the uncontradicted evidence shows that defendant Benjamin Pashby acquired a prescriptive right of way over said land, and, also, that the boundary line, as claimed by him, was established by acquiescence.

▬▬ The right to an easement in another's land acquired by long use and enjoyment is analagous to the right acquired by adverse possession; and the rules of law applicable to the two cases are in harmony. *Barber* v. *Bailey*, 86 Vt. 219, 223, 84 Atl. 608, 44 L. R. A. (N. S.) 98; *Smith* v. *Vermont Marble Co.*, 99 Vt. 384, 395, 133 Atl. 355. To gain a prescriptive right, there must be an adverse continuous user for fifteen years, under a claim of ownership or as of right. *Plimpton* v. *Converse*, 42 Vt. 712, 717, 718; *Mitchell* v. *Walker*, 2 Aiken, 266, 269. And the burden is upon the party claiming such a right to establish it affirmatively. *Plimpton* v. *Converse, supra; Barber* v. *Bailey, supra.*

Benjamin Pashby bought lot 13 in 1899. Within the next four years he built an apartment house thereon. He lived in one of the apartments and rented the others. He was away from home every summer working as a boat builder, carpenter and joiner, returning home in the fall.

Halsey Hathaway and his wife bought lot 14 in 1902 or 1903. They built the house thereon the same year, and lived there for several years.

The adverse possession by which the defendants claim Benjamin Pashby acquired his prescriptive right to the driveway, consisted of the acts of use and enjoyment of himself and his tenants. Their evidence tended to show that Benjamin

Pashby built the driveway soon after he bought his lot and always maintained it; that it had always been used by him and his tenants in drawing fuel and other things to his house and whenever tenants moved in and out; and that this was all done under a claim of ownership of said land by him.

This evidence, however, was contradicted. The undisputed evidence shows that the Hathaways and their successors in title had always used the driveway for their own purposes whenever they so desired, without protest or opposition from Benjamin Pashby. Their evidence also tended to show that in one year, if not more, there was no driveway but a lawn on this strip of land, and Mrs. Hathaway cut the grass on it and cared for it; and that from 1912 to 1918 one of the tenants of Benjamin Pashby used the strip of land by permission from Mrs. Hathaway. One witness had lived in the neighborhood for thirty years and was acquainted with the lots and driveway in controversy. He bought the lot northerly of the Pashby lot about eight years before the trial and had lived there since then. Soon after he bought his lot, Benjamin Pashby claimed to have a driveway on his land, and did not claim to have a driveway on lot 14. He frequently saw tenants moving in and out of the Pashby house, and they always went in and out on the northerly side of the Pashby house. He never saw any of the inmates of the Pashby house use the driveway in question. A daughter-in-law of Benjamin Pashby had lived in this house twenty-six years, but she never heard the ownership of the driveway talked about until after the plaintiffs built the fence that the defendants destroyed.

While the use of the driveway by the owners of lot 14, and the care of the strip of land as a lawn by Mrs. Hathaway, may not have materially interrupted any continuous use of it by Benjamin Pashby, the presumption is that their use and enjoyment of their own land was an exercise of their right to so enjoy it. Such use, in the exercise of their right of ownership would interrupt the continuity of any adverse possession by Benjamin Pashby. *Camp* v. *Camp*, 88 Vt. 119, 92 Atl. 12; *Earl* v. *Griffith,* 52 Vt. 415, 420; *Henderson* v. *Griffin,* 5 Peters, 151, 158, 8 L. ed. 79; *Johnston* v. *Fitzgeorge,* 50 N. J. Law, 470, 14 Atl. 762. This presumption, however, could be rebutted by proof; and the burden was upon the defendants to rebut it. It was for them to show that the interruptions by the

owners of lot 14 and the other facts shown by the plaintiffs' evidence were consistent with the defendants' claim, and not for the plaintiffs to show that they were inconsistent with it. This conflict in the evidence made the question of Benjamin Pashby's prescriptive right in the driveway one of fact for the jury. *Plimpton* v. *Converse, supra; Tracy* v. *Atherton,* 36 Vt. 503, 512.

■■ The same question as to adverse possession arises in the claim of the defendants that the boundary line between lots 14 and 13, as claimed by them, was established by acquiescence. To establish a boundary line by acquiescence, there must be a mutual recognition of a given line by the adjoining owners, and such actual continuous possession by one or both to the line thus recognized for the period of fifteen years, as shall give a perfected title by adverse possession. *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 451, 101 Atl. 151; *Crowell* v. *Bebee,* 10 Vt. 33, 35; *Spaulding* v. *Warren,* 25 Vt. 316, 323. The defendants' evidence tended to show the establishment of such a line about six feet southerly of the line claimed by the plaintiffs; but the plaintiffs' evidence, as we have before stated, tended to show such interruptions by the owners of lot 14 of the continuous adverse possession by Benjamin Pashby to the line claimed by the defendants, as would defeat that line. This made the question of the establisment of that line one of fact for the jury.

[14 ]We hold that there is evidence in the record that fairly and reasonably tends to support the verdict, and there was no error in the action of the court below in overruling the motion to set aside the verdict. *Jasmin* v. *Parker,* 102 Vt. 405, 148 Atl. 874; *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 447, 129 Atl. 317; *French* v. *Wheldon,* 91 Vt. 64, 69, 99 Atl. 232; *Rainey* v. *Grand Trunk Ry. Co.,* 84 Vt. 521, 529, 80 Atl. 723.

*Judgment affirmed.*

PETITION FOR NEW TRIAL.

■ The defendants have brought a petition for a new trial based upon the ground of newly discovered evidence. The newly discovered evidence is a survey of lots 13 and 14 made by Jesse H. Sinclair, a civil engineer, some time after the trial

below. The defendants claim that this survey establishes that the line, as claimed by them, is the true boundary line of these lots.

From the evidence taken at the trial below and on the petition for a new trial it appears that the survey made by Mr. Sinclair is not based on the plan of O'Neil, McSweeney, and Andrews, but on a survey and plan made in 1912. The plan of O'Neil, McSweeney, and Andrews provided for a new street, marked "O'Neil Street" on the plan. This street was not accepted by the city of Burlington. The survey of 1912 divided the land formerly plotted for O'Neil Street into building lots, and a new plan was made. The property which had been previously sold, including lots 14 and 13, are left blank on the new plan. It does not appear by whom or by what authority the survey and plan of 1912 was made, nor that the parties in this case or their predecessors in title were parties to or consented to them. It further appears that prior to the trial below Benjamin Pashby learned where Mr. McIntosh had located the boundary line between lots 14 and 13; that Mr. McIntosh, in a conversation with Mr. Pashby asked him if he had had his lot surveyed, and Mr. Pashby replied "that he knew where his lines were, and either said he did not need or did not care for a survey."

Benjamin Pashby gives the following reasons in his affidavit why the petitioners did not discover this newly discovered evidence before or at the time of the trial below: "I knew there were plans of this property on record in the city clerk's office of the city of Burlington and I gave to my attorney this evidence which I had. I understood through my attorney that it was claimed that H. M. McIntosh had found this line to be incorrect and that it ran some five or six feet northerly from where I understood my line to be. In view of the plans on record and in view of my occupancy it seemed clear to me that a jury could decide this matter only in my favor, and that any resurvey would not aid in determining this. Accordingly no resurvey was made."

It is apparent that the petitioners were not surprised by the testimony of Mr. McIntosh on the trial below, and the only reason why they did not produce opposing evidence was because they were so certain of a verdict in their favor they did not consider it necessary. This, on its face, shows such a lack

of diligence that the testimony of Mr. Sinclair cannot be considered to be newly discovered, in a legal sense. *Quinn* v. *Halbert,* 52 Vt. 353, 362; *Earl* v. *Griffith,* 52 Vt. 415, 421; *State* v. *Hathorn,* 100 Vt. 431, 138 Atl. 733; *State* v. *Maguire,* 100 Vt. 476, 486, 138 Atl. 741; *Fitzpatrick* v. *Taber,* 100 Vt. 82, 135 Atl. 11.

But this alone is not decisive of the question, for, as was said in *Gilman* v. *Nichols,* 42 Vt. 313, 315: "It is the duty of the Court to have regard to the state of the case as it stood upon the evidence on the trial. If, upon the main facts in issue, the evidence stands so well that a party may well claim and expect a verdict, such party, in asking for a new trial, would deserve a different consideration from one who had not been active and efficient in producing such a state of the evidence in his own favor."

With the uncontradicted evidence in the case showing the use and occupancy of the strip of land in controversy by the owners of lot 14 under their right of ownership during the time Benjamin Pashby claimed to use and occupy it adversely, we think the verdict rendered was the only verdict that could reasonably be expected upon the evidence.

*The petition is dismissed with costs.*

Note.—When this case was heard it was assigned to Chief Justice Watson. After his decease it was ordered reargued, and at the January Term, 1930, was reassigned to Mr. Justice Thompson.