No. 13,138.

PRIESHOF *v.* BAUM, ADMINISTRATOR.
(29 P. [2d] 1032)

Decided February 13, 1934.

Mr. Roy A. PAYTON, for plaintiff in error.

Messrs. LANGDON & BARBRICK, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS controversy concerns the boundary or dividing line between the NE¼ and the NW¼ of section 11, Twp. 22 S., R. 61 W., Pueblo county, Colorado, and involves a strip of land approximately 40 feet in width along the dividing line between the two quarter sections. The defendant in error, on the 13th day of March, 1931, instituted this action which is in the nature of ejectment, designated, however, under our Code, as an action for the recovery of the possession of real property, and sought

thereby to have restitution of the 40 foot strip of land here in question, alleging the ownership of the NE¼ of said section 11, and the possession thereof as well as the right to possession of the 40 foot strip here in question.

The plaintiff in error, being defendant below, filed his answer denying that Baum, defendant in error, is entitled to the possession of the lands described in his complaint; denies entering upon the 40 foot strip of land along the westerly side of Baum's quarter section; denies ejecting plaintiff therefrom. As special defense he alleges: That the lines and boundaries between the lands of the parties hereto were fixed and established in the year 1910 or prior thereto; that a fence was placed upon said boundary line by plaintiff's intestate; that such fence has so remained as a fixed boundary for a period of more than 20 years prior to the bringing of this suit; that the line so marked has been acquiesced in by all the parties hereto for more than that period, and has been recognized as the division fence marking the lines and boundaries; that the strip of ground involved herein has been in the open, exclusive and actual possession of the defendant under a claim of right thereto for more than 20 years and for more than 18 years and, for that reason, plaintiff Baum is estopped to now question the correctness of the boundary line so established by his intestate. By way of counterclaim or set-off, defendant claims that the value of improvements made on said strip of ground exceeds the amount of the rental or occupancy charged by plaintiff and prays that title to the strip of ground in controversy be quieted in him.

It is disclosed by the pleadings and evidence that on the 23rd of October, 1908, John Prieshof, the plaintiff in error, filed upon the NW¼ of section 11, as a homestead and moved his family onto said land about May, 1910. In September, 1910, he relinquished the east one-half or 80 acres of this quarter section, and his wife, Wibina Prieshof, filed on same as a desert claim. August 12, 1913, Prieshof and his wife relinquished their then re-

spective acreages to the government, and on the same date, John Prieshof, plaintiff in error, refiled a homestead entry on the entire NW¼ of said section. Patent was later issued to him and he still owns said land.

On October 26, 1908, Anthony C. Baum filed on the NE¼ of said section 11 as a desert claim. On December 10, 1912 ,he relinquished said land to the government and then made homestead entry thereon, and patent was issued to him September 13, 1916. Sometime after the first entry by Baum, he fenced said land, leaving outside of his fence on the north and west sides of said quarter, a strip of ground approximately 40 feet wide expecting same to be used for road purposes when other lands were filed upon. Anthony C. Baum died July 1, 1917, and Charles A. Baum, defendant in error, administered upon his estate and as administrator, brought this action. On the trial of the case, the defendant, Prieshof, owner of the NW¼ of said section, disclaimed as to the 40 foot strip on the north side of Baum's quarter, and the trial court made findings and entered judgment thereon in favor of Baum, the plaintiff below, as to the 40 foot strip along the westerly side of said NE¼. To reverse this judgment, Prieshof brings error.

Plaintiff in error contends that the action is barred by the statute of limitations; that by acquiescence, the boundary line has been established between the parties and estoppel operates against the defendant in error; that the true boundary line between the parties is the present location of the fence, and that if the 40 foot strip of ground in question was ever the land of the defendant in error, it has passed to plaintiff in error by reason of his adverse possession for more than the statutory period.

Plaintiff in error argues that Baum had the right to, and could have begun this ejectment suit any time after October 26, 1908, the date of the desert claim filing by him on the NE¼ of section 11, and insists that unless he did so within 20 years from the time such right accrued, he was barred by the statute of limitations. That

he had such a right, as an entryman, against subsequent encroachment, we do not question, but the date of filing a homestead or desert entry does not toll the statute. The statutory limitations begin to run in favor of an adverse claimant in possession, which plaintiff in error claims to be, when the entryman is legally entitled to a patent. *Denver & R. G. R. R. Co. v. Wilson,* 28 Colo. 6, 62 Pac. 843.

Baum's patent issued September 13, 1916. This suit was instituted less than 15 years thereafter, on March 13, 1931. This definitely disposes of plaintiff in error's contention that the 20 year statute of limitation, being section 6418, C. L. of 1921, or the 18 year statute of adverse possession, being section 30 of chapter 150 of the Session Laws of 1927, bars this action.

Plaintiff in error's contention that defendant in error, Baum, is now estopped because of his acquiescence in the boundary line fixed by the fence thereon, is without merit. There is no evidence to the effect that Baum ever recognized this fence as being placed on his west boundary line. It is to be remembered that Baum applied for and was entitled to receive, by compliance with the law, the NE¼ of section 11, from the United States Government. Where the boundary lines of that quarter section of land were located were to be determined by the monuments of the United States survey. Such were presumably in existence at the time of the filing, and can undoubtedly be accurately located at this time.

There must be mutuality in the fixing of, and the acquiescence in, a boundary by owners of adjoining lands. The location must be actual. From the pleadings and evidence herein, the only mutuality existing was the self-serving brand singularly possessed by plaintiff in error. Baum, according to the evidence, placed his fence 40 feet on the inside of the north and west lines of his quarter section before plaintiff in error moved onto the adjoining quarter section on the west. Plaintiff in error took no part in this fence location, hence there was no

agreement on his part as to the fixing of the boundary line at that time, if it could be said that it was fixed. We cannot find from the evidence that Baum thereby acquiesced. If it can be said by any construction of the circumstances of the case that he did acquiesce in the allowing of this fence, as placed by him, to be or become the fixing of the boundary line between his land and that of plaintiff in error, it must appear that he so acquiesced for a period of 20 years after he acquired title. It has been hereinbefore observed that he brought this suit in less than 15 years from the date of his patent. As support for this statement we cite, and refer plaintiff in error to his own citation: ''We do not conceive that a conventional line is defeated, although the original agreement was made by parties without title, but in possession, if after they acquired title the agreement was mutually understood to remain in force, and possession accordingly was acquiesced in for twenty years.'' *May v. Labbe,* 114 Me. 374, 96 Atl. 502.

If the law would lend itself to sustain the adverse continuous possession theory of plaintiff in error, he would fall short by the facts in the case. By relinquishment of all the NW¼ to the government on August 12, 1913, by plaintiff in error and his wife, the continuity of possession before that date, was broken. This act, on that day, returned to the government every right of possession that plaintiff in error enjoyed. The fact that he refiled on all the land the same day, if within five minutes after the relinquishment, did not restore what he once enjoyed. He had chosen to start anew. ''Furthermore, the contention of appellant, that he could tack Wallace's possession on to his own for the purpose of making up the period of the statute, is based upon a misconception of the legal effect of a relinquishment. * * * A relinquishment turns the land back to the United States, and with it every right, possessory or otherwise, that the entryman enjoyed.'' *Hemphill v. Moy,* 31 Ida. 66, 169 Pac. 288. It then follows that neither the 18 nor

20 year statute would afford him protection against a suit filed March 13, 1931.

As to the correctness of the location of the exact line of boundary between land of the parties hereto as determined by surveys evidenced herein, we find little, if any, dispute, but if the evidence be considered conflicting, the court made its finding thereon, and there being ample support in the evidence for its finding, the judgment thereon will not be disturbed.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BURKE concur.