## No. 16,412.

### LIVELY ET AL. *v.* WICK ET AL.
(221 P. [2d] 374)

Decided July 1, 1950.   Rehearing denied August 14, 1950.

Mr. EMORY L. O'CONNELL, for plaintiffs in error.

Mr. SAMUEL W. JOHNSON, Mr. A. E. SMALL, JR., for defendants in error Wick.

Mr. MILTON C. GARWOOD, for defendant in error insurance company.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THE filing of a petition for determination of boundaries was the origin of this case. Petitioners, Mr. and Mrs. Wick, named their neighbors Mr. and Mrs. Lively, who adjoin them immediately on the east, as defendants. The latter denied that there was any dispute as to the boundaries, and alleged that they had been in possession of any land claimed by plaintiffs continuously, openly, notoriously, peaceably and adversely to plaintiffs, their grantors and predecessors in interest for more than twenty years preceding the commencement of the action; that the boundary line is well marked and established by a fence, a row of trees and an irrigation ditch,

and that it had been recognized and acquiesced in by the plaintiffs, their grantors and predecessors in interest for more than thirty years prior to the commencement of the action. The trial procedure was under Rule 105, R.C.P. Colo. Judgment was in favor of plaintiffs, and defendants appearing here as plaintiffs in error seek reversal.

The trial court found that the true boundary line between plaintiffs' and defendants' property was the north and south center line of section 34. This finding was based upon the calls of the respective deeds—plaintiffs' conveying the Northeast quarter of the Northwest quarter, and defendants' conveying the Northwest quarter of the Northeast quarter. The court further found that this line was 51.5 feet east of the present boundary line on the north and 26 feet east of the present boundary line on the south. The length of the strip in dispute appears to be in the neighborhood of one thousand feet. These findings are based upon the testimony of plaintiffs' engineer and also upon plaintiffs' Exhibit A, being a map showing the present boundary line and also the mutual boundary line called for by the title deeds to the litigants.

The finding of the court, to which exception is taken, reads: "That the defendants' evidence has failed to establish acquiescence; or adverse user of any of the lands in dispute."

Counsel confines his specifications of error to the findings of the court on these two points. His position, as stated, is: "We believe that the judgment of the trial court was so clearly erroneous on the question of title by adverse possession and the establishment of boundaries by acquiescence that we have predicated no specification of points on any other grounds."

Defendant Clarence Lively introduced in evidence the chain of title to his property beginning with the year 1918. The owner then was Carl C. Schuyler who, before conveying his interest, mortgaged the property to the

Union Central Life Insurance Company on April 1, 1926. The latter company acquired the property by sheriff's deed through foreclosure September 30, 1935, and February 3, 1936, conveyed to the Livelys who have been in continuous possession since that time.

The testimony of Lively was to the effect that the boundary fence between the two properties was the same thirty-one years earlier as at the present, and that there had been no change in its location during the intervening years, regardless of change of occupants and owners. Lively stated he had lived in his present location for twenty-one years and that during the years he had owned the property he had farmed right up to the fence; that previous owners had done likewise, and that to his knowledge none of the known owners of the Wick property had ever farmed any of the land east of the fence.

Larry Wren testified that he was a brother-in-law of Walters, one of the previous owners of the Lively property; that when he first went on that property in 1916 the fence between the Lively and the Wick property was in the same location as it is now. He stated that he believed his brother-in-law and the other owners of what is now the Lively property farmed up to the fence line; that the trees were there in 1916 and were just about as big as they are now. He further testified that a Mr. Atwater, who was the predecessor in interest of his brother-in-law, Walters, grazed cattle up to the fence.

Plaintiff Wick testified that he had purchased his property in 1932 and that the fence, consisting of strands of wire strung between the line of cottonwood trees with posts interspersed, existed at the time of his purchase. He further testified that when his cows got on the other side of the fence he took steps to get them back on his own land. The testimony of both Mr. and Mrs. Wick creates the impression that the fence was maintained more through their effort than that of any-

one else. Wick testified that he first realized that the fence did not mark the boundary called for by his and the Lively deeds when he had his property surveyed about two years before bringing this suit; the survey was for the purpose of preparing a proper description to convey a portion of his property to his children; that when he bought the property and moved on it in 1932 he stated that the condition of the fence was "practically the same as it is now. I kept up the upper half of it so I could turn my stock out." In respect to the present fence, he testified, "Well, some of it is nailed to the trees and there is a few posts there that I put in." He further testified that there is a little canal or irrigating ditch about ten feet east of the fence and paralleling it generally; that he did not use the ditch, but that Lively used it once in a while to irrigate his land there.

On cross-examination, Wick stated that the fence marking his east boundary is not as good as that on the other sides of his property. The alfalfa grows east of the fence line and the fence serves to keep his cattle out of the Lively alfalfa. "Two wires in some places, three in others. They are all sagging." His testimony also included the following statements: The fence for the seventeen years that he has been there has been along the same line as now located. He has a shelter shed on the east boundary of his property for his stock which he built seven years ago. The east wall of that shed is exactly on the fence line. He never has farmed any of the land to the east of the fence. Lively had hay in there most of the time and has farmed up to within ten or twelve feet of the row of trees and the fence during all of the seventeen years. North of the trees the farming came up pretty close to the wire fence.

Mrs. Wick's testimony tended to corroborate that of Mr. Wick. When asked about the 1881 posts to which she referred in the line of the fence, she replied, "Well, evidently it is the old homesteader's stuff." "Q. So

that indicates that that fence had been standing many, many years ago? A. Yes. Q. In the same place where it is now? A. Yes, sir."

As to the facts in this case, there does not seem to be much dispute. Both litigants, as well as their predecessors in interest, seem to have recognized the line of the fence as the boundary between the two properties for as long as any of the witnesses could remember, the earliest date in the testimony being 1916. The same trees that are in the line of the fence now were there at that time and were used as part of the fence.

■ The two main purposes of a fence are to act as a barrier and to mark a boundary. In many cases it performs both functions. In *Prieshof v. Baum,* 94 Colo. 324, 29 P. (2d) 1032, where the latter had purposely constructed his fence four feet within his boundary line on the theory that there would shortly be a section line road opened between his land and his neighbor's, and when later that road was not constructed, we in effect held that his fence was merely a barrier and not a boundary fence; that his abutting neighbor had not acquired the four foot strip by adverse possession, nor had Baum lost it by acquiescence in the fence as his true boundary line; that the fence he had constructed was simply a barrier and not a boundary fence.

In this case the testimony shows that while the fence between the lands of the litigants was on occasions a faulty barrier, there does not seem to have been any time in the past, up to within two years of this litigation, when there was any doubt in the minds of the litigants and their predecessors in interest but that the fence marked the true boundary between the two tracts involved in this controversy. This is in sharp contrast to the facts in *Prieshof v. Baum, supra,* where mutuality in acquiescence in the boundary line between the adjoining land owners was lacking.

This, then, is not a case of determining whether findings of a trial court based upon conflicting testimony

are supported by substantial evidence, but rather it is a question of determining whether the trial court has made a correct application of the law to the established facts.

Counsel for plaintiff Wick argue that the burden of proof was upon defendant Lively to prove that possession of the strip of land by him and his predecessors in interest was adverse to Wick and his predecessors in interest, and we are persuaded that the trial court must have assumed that position when it found that, "defendants' evidence failed to establish acquiescence or adverse user of any of the lands in dispute." Upon whom the burden of proof rested is the important question of the case.

■ ■ We have recently determined this point adversely to the contention of plaintiffs Wick in *Trueblood v. Pierce*, 116 Colo. 221, 233, 179 P. (2d) 671, 171 A.L.R. 1270, where, referring to the litigants who occupied an analogous position to that of defendants Lively in the instant case, we said that they "and their predecessors in title have been in possession of the easement for more than eighteen years; there is, as a result thereof, a presumption that their holding was adverse. *Haines v. Marshall*, 67 Colo. 28, 185 Pac. 651; *F. C. Ayers Merc. Co. v. Union Pacific R. Co.*, 16 F. (2d) 395; *Shonafelt v. Busath*, 66 Cal. App. (2d) 5, 151 P. (2d) 873; *Friend v. Holcombe*, 196 Okla. 111, 162 P. (2d) 1008; *Ferguson v. Standley*, 89 Mont. 489, 300 Pac. 245; 2 C.J.S., 822; consequently, it was incumbent upon defendants to overcome this presumption, and this they did not attempt to do. The presumption being that plaintiffs' possession was adverse, the uncontradicted evidence is that plaintiffs and their predecessors in title were in open, notorious and visible use and occupation of the easement under a claimed right thereto for more than eighteen years, and as a result thereof fully established their right to the easement by prescription." Any doubt as to whether this presumption was limited to those

acquiring an easement by prescription and not to those acquiring title by adverse possession or acquiescence we resolved in favor of the latter in *Vade v. Sickler,* 118 Colo. 236, 195 P. (2d) 390, where we held, as stated in paragraph 3 of the syllabus, that, "Where a party has continuous and exclusive possession of land for more than eighteen years, such possession being sufficiently open and obvious to apprise the true owner, in the exercise of reasonable diligence, of an intention to claim adversely, the presumption is, that the possession is adverse."

Another question raised by counsel in this case involves the principle of tacking. In *Lundquist v. Eisenmann,* 87 Colo. 584, 290 Pac. 277, our court, speaking through Mr. Justice Campbell, applied the principle, "That where * * * there is privity of title or estate, the possession of successive disseizors may be joined or tacked together so as to be regarded as a continuous possession." In *Trueblood v. Pierce, supra,* we extended the principle of tacking in the case of an easement acquired by prescription where the conveyance from the grantor exercising the easement made no mention in the deed to the grantee of the easement which the grantee continued to exercise in the same manner as his grantor. The privity between the grantor and the grantee in that case was therefore one of possession and not of title, as in *Lundquist v. Eisenmann, supra.* In the instant case, it is admitted that the deeds running to defendant Lively and his predecessors conveyed simply the northwest quarter of the northeast quarter, and the legal description did not include the narrow strip of land that is the subject of this controversy. In that respect, therefore, the instant case is like *Trueblood v. Pierce, supra.*

Again, it is argued by counsel for plaintiffs Wick, that *Trueblood v. Pierce, supra,* deals simply with an easement by prescription, whereas the present case involves an actual holding of property either by adverse

possession or acquiescence. Just as in *Vade v. Sickler, supra,* we applied the same presumption concerning adverse possession as we did in *Trueblood v. Pierce, supra,* to easements acquired by prescription, so here we apply the same rule in respect to tacking in the acquiring of title by adverse possession and acquiescence that we applied in *Trueblood v. Pierce, supra,* to the acquiring of an easement by prescription. In fact, it might almost be said that our resolution of this case had been foreshadowed by our decision in *Trueblood v. Pierce, supra.* In volume 21, Rocky Mountain Law Review, at page 111, it is pointed out that, "Trueblood v. Pierce * * * seems to make no distinction between adverse possession and prescription and the court uses the terms interchangeably." That other jurisdictions apply the same rule interchangeably as to title to land acquired by adverse possession and to easements acquired by prescription is disclosed by the following cases: *Naporra v. Weckwerth,* 178 Minn. 203, 226 N.W. 569; *D'Orazio v. Pashby,* 102 Vt. 480, 150 Atl. 70; *Tarrant County Water C. & I. Dist. v. Reid* (Tex. Civ. App.), 203 S.W. (2d) 290; *Abatiell v. Morse,* 115 Vt. 254, 56 A. (2d) 464.

It also is argued that acquisition of title by the Union Central Life Insurance Company through foreclosure broke the chain of privity between defendant Lively and his earlier predecessors in interest, and hence the principle of tacking would not be applicable here. *Kelly v. Green,* 142 Minn. 82, 170 N.W. 922, cited by counsel for plaintiffs Wick, in holding that where the mortgagor surrendered possession to the mortgagee the necessary privity was present to permit tacking, seems to be an answer to, instead of a support of, that contention; and *Durden v. Groce* (Tex. Civ. App.), 159 S.W. (2d) 941, involving title acquired through foreclosure by trustee's deed, appears to be a further answer. See, also, the following two cases where title was acquired by sheriff's deed: *Cooper v. Tarpley,* 112 Ind. App. 1,

41 N.E. (2d) 640; Menzner v. Tracy, 247 Wis. 245, 19 N.W. (2d) 257, 869.

The judgment is reversed.

MR. CHIEF JUSTICE HILLIARD dissents.