No. 21079.

JOHN S. KELLY, ET AL. *v.* JACK MULLIN, ET AL.
(413 P.2d 186)

Decided April 18, 1966.

WILLIAM A. TRINE, for plaintiffs in error.

FRANCIS A. BENEDETTI, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THIS action had its inception in the district court of Yuma County and was brought by defendants in error, hereinafter referred to as the Mullins, against the Kellys, plaintiffs in error, pursuant to C.R.S. 1963, 118-11-1 to 3, inc., alleging that the boundary line between parcels of property owned by the respective parties was in dis-

pute. The Mullins prayed that the court establish the true boundary between the adjoining parcels of land.

The Kellys, alleging one of the defenses as provided in 118-11-3, put in issue "by proper plea" the fact that a fence running in a general east-west direction and located in varying distances south of the alleged "true boundary line" had been recognized and acquiesced in as the boundary line by the parties or their predecessors for a period of more than 20 consecutive years. The Kellys also contended that their predecessors in interest and their own possession of the disputed land had been open, notorious and adverse for so long a time as to give them title by adverse possession. They asked the court to decree the fence to mark the actual boundary line between the properties.

The Kellys owned the tract to the north of the fence and included within the parcel on their side were approximately 48 acres, which the Mullins claimed, and which would be included in the Mullins parcel according to the true boundary which they desired to be established.

The trial court made findings of fact and conclusions of law decreeing that although the fence had existed for over 30 years, it had been originally erected as a barrier rather than a boundary fence, and that the parties had not acquiesced in the fence as establishing a boundary line between the properties. Judgment was entered ordering the Kellys to remove the fence from the Mullin property; ordering them to erect a fence on the true boundary line as established by survey; decreeing that the parties each pay one half of the cost of the fence, and that the Kellys pay all the cost of the survey, and costs including expenses for the commissioners appointed pursuant to statute to report the true boundary line.

Error is assigned to the judgment on several grounds which can be summarized as an assertion that the evidence does not support the findings of the court and

that a contrary finding should be made by us as a matter of law. We are urged to determine that the original use of the disputed land was not permissive but was adverse; or, in the alternative, to hold that if the evidence supports a finding that possession was originally permissive there was explicit disclaimer of such use followed by more than 18 years of adverse possession. Additionally, it is urged that the uncontroverted evidence establishes an acquiescence by the parties and their grantors in the fence as a boundary. Another assignment of error concerns a ruling by the court suppressing answers to written interrogatories by one of the witnesses and the court's refusal to consider them or receive them in evidence after tender by the Kellys.

▉▉ We first consider the findings. The question of what function a fence has performed over a period of years and whether it has been acquiesced in as a boundary is peculiarly a question of fact. *Briem v. Smith*, 100 Utah 213, 112 P.2d 145; *Rydalch v. Anderson*, 37 Utah 99, 107 Pac. 25. In our own jurisdiction on the question of whether a fence has performed a function of barrier or boundary, or both, we have not hesitated to uphold a finding that a fence constituted a barrier when such is supported by the evidence. *Fisher v. Peterson*, 152 Colo. 221, 381 P.2d 29; *Archuleta v. Rose*, 136 Colo. 211, 315 P.2d 201; *Prieshof v. Baum*, 94 Colo. 324, 29 P.2d 1032.

▉ The record herein amply supports the conclusion of the trial judge that the fence was merely a barrier and not a boundary line. We need only point to several items in the evidence to demonstrate this. First of all, the fence in question is a meandering one, taking seven different changes in direction in its course through the Mullin property and varying in distance from 250 ft. to 1000 ft. south of the true boundary line established by survey and decree by the court. In view of the fact that the plaintiffs described the property they claim to own as being ½ of one quarter section and ¼ of another

quarter section, and claim no property by metes and bounds, the meandering fence by its peculiarly crooked course is at variance with the concept of a section line. It was the testimony of the surveyor that the fence passes near the heads of several canyons and was so placed as to be in the most convenient location and area of easiest access. There is also evidence that the fence served the purpose of separating field from pasture and pasture from pasture in an area where there are a number of such fences serving the same purpose, which have been erected without regard to ownership or legal description. This, together with other testimony which also is pertinent to the question of adverse possession, is sufficient to form a basis for the court finding that the fence was never intended to be considered as defining the true boundary line, but that it was created and maintained as a barrier.

Turning to the assertion of adverse possession, the trial court found that the original entry made by the Kellys' predecessor in interest on the land now owned by the Mullins was permissive and that the passage of time did not change its character. The court also found that there was no disclaimer by the Kellys or their predecessors that they were holding the disputed land by permission. The Kellys agree with the general proposition of law that where entry is permissive *a disclaimer must be made* before the statute of limitations begins to run. They assert, however, there is no evidence that the entry was originally permissive and, too, that if there is such evidence the undisputed testimony establishes an effective disclaimer by them and their predecessors. On this point the record is not controverted that at the time of the construction of the fence a relationship of father and daughter existed between the predecessors in interest of both Mullins and Kellys.

As is stated in 2 C.J.S. Adverse Possession, § 227, "Where claimant takes possession of property belonging to a relative, strong proof of hostility is re-

quired to start the running of the statute." Suffice it to say that "strong proof" is lacking in the instant case when combined with the circumstances of the construction of the meandering fence, as noted above. Thus the trial court acted well within its prerogative in finding that the possession of the original 48 acres by a father, one Mr. Kester, of the portion of his daughter's land, was not adverse to her.

Looking at the evidence as to the asserted disclaimer, the Kellys contend that their predecessors in interest made leases on the land to others, including one of Mullins' predecessors in interest, and that such leases included all of the land north of the fence. No lease was entered into evidence, and there was no evidence that a lease was actually entered into specifically covering the disputed 48 acres. All that can be gleaned from the record was that the leases (whether oral or written we do not know) were for the legally described land, to-wit: N ½ of NW ¼ and the NW ¼ of the NE ¼, Section 18, Township 3 South, Range 44 West of the 6th P.M. Such a description would not include the 48 acres attempted to be claimed south of the true section line.

Touching briefly on the matter of the interrogatories and answers thereto, the court suppressed the same on the ground that the notices were insufficient as to time as prescribed by R.C.P. Colo. 31 (a) and for the reasons that the answers were inconsistent and conflicting. Whether the court erred or abused its discretion in suppressing the proffered evidence is of little consequence and a ruling thereon would not alter the result here obtained.

Trial was to the court. The answers were cumulative in nature and were merely an offer of testimony by a witness of what had already been established by others. See *Appelhans v. Kirkwood*, 148 Colo. 92, 365 P.2d 233, for the proposition that no prejudice results in the exclusion of a deposition where it merely tends to establish what is already in evidence.

■ Finally, we are asked to examine the judgment of the court for assertedly granting relief beyond that permissible by law. The court entered an order for the Kellys to remove the present meandering fence from the Mullin property and further ordered both parties to share equally the expense of a new fence along the boundary established by the commissioners. While it is true that C.R.S. 1963, 8-13-15, provides for the right of access by one land owner to remove a fence, it was error for the court to make it mandatory upon the Kellys to do so. This was a fence of historic origin and is no more the responsibility of the Kellys than the Mullins.

■ On the matter of the sharing of the costs of a new fence along the boundary line, the judgment of the court was couched in language to assert continuing jurisdiction over the parties until the fence is built and the expense thereof determined. This was a proceeding to establish the boundary and not one instituted under C.R.S. 1963, 8-13-1 to 15, inc. Either of the owners of adjoining property may initiate the building of a fence if one or the other desires, and the procedure for the sharing of the cost is provided for by the above mentioned statute. The judgment on this issue was outside the scope of the pleadings or the issues tried.

■ The judgment assessing the costs of the survey and the expense of the commissioners to the losing party is in accord with C.R.S. 1963, 118-11-11, which provides, "The costs in the proceedings shall be taxed as the court shall think just * * *." We find no error in this portion of the judgment.

The judgment is, therefore, affirmed in part but reversed as to that portion requiring the Kellys to remove the fence and ordering a new fence to be built and the expense thereof shared between the parties.

MR. JUSTICE McWILLIAMS and MR. JUSTICE PRINGLE concur.