No. 20673.

Josephine S. Hartley, etc., et al. *v.* Crusita V. Ruybal, heir at law of Ramon Ruybal, et al.

(414 P.2d 114)

Decided May 9, 1966.

SMITH & SMITH, for plaintiffs in error.

LEONARD M. HAYNIE, JESSE E. POUND, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties by name.

The Hartleys filed a complaint in the district court pursuant to the statutory proceedings under C.R.S. 1963, 118-11-1 to 12 inclusive, alleging that the boundary lines between their property and that of the Ruybals to the north and between their property and that of Martinez to the east of them were in dispute; and that the monuments and corners of the true boundary were not discernible and had been obliterated, lost or destroyed. They prayed for the appointment of a commission to establish the true boundary line separating the respective properties.

Defendants, in their answer, admitted that the boundary lines were in dispute, but asserted that the parties and their grantors and predecessors in title had, for a period of twenty consecutive years *or more,* recognized and acquiesced in certain fences as being the dividing line and forming the boundaries of the lands in question. This is one of the matters that may be raised in the statutory proceedings. By stipulation of the parties, the issue as to whether the fences had been acquiesced in within the prescribed time, if at all, was tried to the court, and the matter of the appointment of the commission was postponed until this issue be determined.

The evidence adduced at the trial indicated that

part of the property owned by the Hartleys had been acquired derivatively and that a certain portion had been obtained by tax deed; that the section line of the property, according to the legal description and a survey made in 1947, was in distances approximately 80 to 175 feet north of the fence existing between the Hartleys' property and the Ruybals' property; that the fence for certain distances ran substantially parallel and adjacent to an old highway, but then continued in an easterly direction on an independent course extending through the Hartley property. There was testimony that the fence had existed for at least 40 and perhaps as long as 60 years; that the Ruybals and their predecessors in interest had been in open, notorious and visible possession of all of the land on their side — the north side of the fence — under a claim of right therein.

As to the dispute between the Hartleys and Martinez involving a 40 foot strip of property along the east side of the Hartley land, the only evidence was that the fence had existed for over 30 years and was a substantial fence. The difference in the quantum of proof as between the fence on the north separating the Hartley and Ruybal properties and the fence on the east separating the Hartley and Martinez property will be commented on later.

The court, however, made a single conclusion of law based on findings that the fences on both boundary lines had been acquiesced in for a period longer than that required by law and entered judgment in favor of the Ruybals and Martinez and against the Hartleys and dismissed the complaint.

The Hartleys have prosecuted this writ of error contending:

1. That the evidence does not support the finding of the court that there had been acquiescence in the fences as boundary lines between the properties;

2. That if such acquiescence had been shown it could have no effect on that portion of the disputed property

which the Hartleys acquired by tax deed and concerning which the requisite statutory period of 20 years had not run.

A third assignment of error that the court indicated it was ready to announce its decision before plaintiffs had an opportunity to present some rebuttal evidence is without merit.

On the first assignment of error, the Hartleys contend as a proposition of law that for acquiescence there must be: (a) mutuality between the parties that the fence is a boundary; (b) that such mutuality must be based on complete knowledge of all the facts; (c) that the Ruybals had the burden of proof to establish mutuality between the parties. On the foregoing premises, they additionally argue that the burden of proof was not sustained by the Ruybals; that there is no evidence in the record as to mutuality, and that the Hartleys could not have agreed that the fence was a true boundary because they had no knowledge upon which they could base their acquiescence.

■■ As a general proposition of law, it is true that there must be mutuality in the fixing of a boundary in order for acquiescence to be found. *Prieshof v. Baum,* 94 Colo. 324, 29 P.2d 1032. However, what evidence may support such mutuality was not commented upon by the court in that case and has received little or no attention in any other case. In *Prieshof, supra,* as well as in *Archuleta v. Rose,* 136 Colo. 211, 315 P.2d 201; and in *Fisher v. Peterson,* 152 Colo. 221, 381 P.2d 29, we held that the evidence supported the finding of the trial court. From those cases, then, it may be deduced that implicit in our decisions was the proposition that whether a fence is acquiesced in as a boundary or merely exists to serve as a barrier is a question of fact to be decided by the trial court. Utah, having similar problems as to range land, has also so decided. *Rydalch v. Anderson,* 37 Utah 99, 107 Pac. 25; *Briem v. Smith,* 100 Utah 213, 112 P.2d 145. We so held in *Reinhardt v. Meyer,* 153

Colo. 296, 385 P.2d 597. See also *Kelly v. Mullin,* 159 Colo. 573, 413 P.2d 186.

One of the tests of acquiescence in a boundary line in addition to the existence of a fence over the prescribed period of time is the actual possession and dominion over the property up to a fence. *Dye v. Dotson,* 201 Ga. 1, 39 S.E.2d 8. Such possession and dominance of the land in dispute by the Ruybals without interference on the part of the predecessors in title to the Hartleys was in evidence in the record before us and supports the finding of the trial court. Livestock grazed upon the land, and the elder Ruybal testified there was never any question that all to the north was his and all to the south was his neighbors'.

On the question of what knowledge must be in possession of the parties in order for them to acquiesce in the boundary, the Hartleys take the position that if they were laboring under a misapprehension as to where the true boundary line existed, they could not acquiesce in the fence as a boundary. The argument is untenable and is repugnant to the presumptions which the law supplies in permitting a party to assert a 20 year or more existence of the fence as evidence of acquiescence in a boundary line. Implicit in the enactment of the statutory remedy is the proposition that the parties do not know the exact location of the "real" boundary line between them. If, without a survey or other exact knowledge, they erect a fence between their property and then conduct themselves thereafter with respect to the land on each side as to indicate they claim no property beyond the fence line, the court can find from such conduct that over the years exceeding the 20 years there develops an accepted boundary between the two properties.

The Hartleys rely on the case of *Connell v. Clifford,* 39 Colo. 121, 88 Pac. 850, in their argument. The case is readily distinguishable. In *Connell, supra,* there was involved a building encroaching 5 inches over

the lot line, which fact was not known by the parties. The case, therefore, was not a boundary dispute nor was the suit instituted to establish lost or destroyed lines or markers. There was no statute involved, such as in the "fence law" upon which the proceedings were commenced. A building is not usually used as a method of delimitating boundary lines since improvements are usually set back from property lines. On the other hand, fences in range country usually do constitute the real delimiting lines. The law creates a presumption that what has been acquiesced in between the parties ripens into a reality after a prescribed period of time.

In further findings upon which the judgment against the Hartleys was based, the court also decreed that the title to the strip of land was vested in the Ruybals by reason of adverse possession for more than 18 years.

■■ In *Hodge v. Terrill,* 123 Colo. 196, 228 P.2d 984, and *Lively v. Wick,* 122 Colo. 156, 221 P.2d 374, we held that in a boundary dispute, when evidence raises the issue of adverse possession, such issue can be considered by the trial court. In *Hodge, supra,* it was stated that "* * * the evidence with reference to the long continued possession being before the court, it became the court's duty to determine the issue thus presented as if it had been raised by the pleadings." As to the evidence of adverse possession, irrespective of the history of open and notorious possession for some 40 to 60 years, the Hartleys admitted that they were first told in 1940 that the fence was not on the true section line. Nevertheless, they delayed until 1947 before having a survey made to officially determine whether the fence had been properly placed on the section line. Then, after the survey, they did not bring their action until 1961. This period of 21 years, from 1940 to the date of suit, would support the finding of adverse possession.

■ Turning now to the second point of error respecting the tax deed, the record reflects that a certain portion of the disputed area described in the tax deed

by metes and bounds was executed by the county treasurer to Josephine Hartley in 1961. The property had been carried on the assessment roll with the notation that the owner was "unknown." The history of how and in what manner this particular portion of land was carved out of the quarter section is not clear from the record. Nevertheless, the validity of the tax deed is not challenged and as such it does give to Josephine Hartley a virgin title to the property, erasing all former interest in the land acquired by the Ruybals. In *Harrison v. Everett*, 135 Colo. 55, 308 P.2d 216, we declared that a tax title from its very nature has nothing to do with the previous chain of title and does not in any way connect itself with it. It breaks up all previous titles. This principle holds true whether the party claims under adverse possession or raises the defense provided in C.R.S. 1963, 118-11-3. By whatever means the Ruybals claimed to have acquired the land, they lost it when a treasurer's deed issued in accordance with the law.

Addressing ourselves briefly to the judgment in favor of Martinez, the record does not contain sufficient evidence to support the trial court's conclusion that there was acquiescence in the fence as a boundary line on the east side of the Hartley property. Martinez' claim was all but forgotten by the conflict between the Hartleys and the Ruybals, and, as a consequence, all that emerged in the record as to the fence along the east was the statement that it was a substantial fence and existed for 30 years and that it *might* be within the legal description of the Hartley property. There was no other evidence of possession of or dominion over the land by Martinez and his predecessors or other testimony such as offered in behalf of the Ruybals. A mere showing of the existence of a fence, with nothing more, is not sufficient.

The judgment of the trial court dismissing the Hartley action with reference to the portion of the land covered by the tax deeds is reversed and the cause re-

88

manded with directions to enter a decree quieting title in the Hartleys to the portion of the land described in the tax deed. The judgment in favor of the Ruybals encompassing the remaining land is affirmed. The judgment in favor of Martinez and against the Hartleys is vacated and held for naught. It is further ordered that the true boundary line between the Hartley and Martinez property be determined either by a commission appointed by the court or by survey as the parties may request of the court, and that a decree be entered determining the true boundary line.

Mr. Justice Moore and Mr. Justice McWilliams concur.