No. 22209.

FRANK L. FORRISTALL; EARL F. FORRISTALL; AND EARL F. FORRISTALL AS TRUSTEE OF FORRISTALL TRUSTS, L. F. ROARK AND PUBLIC TRUSTEE OF LINCOLN COUNTY *v.* DAVID L. ANSLEY.
(462 P.2d 116)

Decided December 8, 1969.    Rehearing denied January 5, 1970.

Frances DeLost, George J. Francis, for plaintiffs in error.

Young and Young, John C. Young, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.[*]

Defendant in error was plaintiff in the trial court and will be referred to as the plaintiff or by name. Plaintiffs in error were defendants in the trial court and will be referred to as defendants or by name. The action was brought to secure a judicial determination of the true boundary line between Section 6 and Section 7, in Township 16 South, Range 52 West, Sixth P.M. in Lincoln County, Colorado, as well as the true boundary between Section 7 and Section 12 in the adjoining township. In this court the question presented involves only the boundary line between Sections 6 and 7, no exceptions having been taken to the determination of the trial court settling the line as between the owners of Sections 12 and 7.

[*]Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

The patent to Section 6 was issued to one Charles B. John in 1920 for 335.67 acres of land "according to the official plat of the survey of said land returned to the General Land Office by the Surveyor General." The defendant Roark purchased Section 6 on August 9, 1945, from Clara Allison, daughter of the homesteader John. The Forristalls received title to Section 6 from Roark on April 12, 1962. Section 7 adjoins Section 6 on the south and plaintiff Ansley acquired title to Section 7 on October 6, 1962. The complaint was filed on January 30, 1963. Roark was thereafter made a defendant as the holder of a deed of trust on Section 6 and the public trustee also was added as a defendant.

Pursuant to statutory authority (C.R.S. '53, 118-11-4) the trial court appointed a commissioner to determine the boundary line between the two sections and to report the locations thereof to the court. S. G. Hillyer, a duly licensed engineer and surveyor, was named commissioner. He made a survey and submitted a plat and written report of the correct location of the disputed boundary line. The date of the report was July 15, 1963. Thereafter, by direction of the court, he submitted a supplemental plat and report containing additional information as to the manner in which the line which he established as the correct boundary was determined. The supplemental plat and report did not change the boundary as indicated in the commissioner's first report. Plaintiff was satisfied with the boundary line as established by the commissioner since it was a very close approximation to the line which he claimed to be correct.

The defendants objected to the report of the commissioner basically and generally because it was located by measurements from stones at the common corner of Sections 7, 8, 17 and 18 of Township 17 South, Range 52 West, Sixth P.M. in the intersection of two county roads and from a stone found at the common corner of Sections 17, 18, 19 and 20 in Township 17 South, Range 52 West, Sixth P.M. (called the McKnight Corner). Both stones

are at interior corners and not within the boundaries of Township 16 in which the line in dispute is located. Defendants also question the McKnight Corner being a government corner because it is marked with a rock buried in the road rather than by the pits and mound marking shown by the field notes as marking the common corner. These doubtless were obliterated when the road was built. The commissioner, in his supplemental report (Exhibit E), stated that from the appearance and markings he believed it was an original government stone set in the original survey of the township dated September 25, 1880.

In disposing of the objections of the defendants to the report of the commissioner, and after hearing the testimony of numerous witnesses, the trial court included the following, *inter alia,* in its findings:

"The Court finds from the evidence that Section 6 was patented by Charles B. John in 1920; that he obtained his receivers receipt in 1918; that he had purchased a relinquishment and was not the first entryman on said Section 6; that as far back as 1918 there was a fence, of which the trace is still clearly visible, running from the Easterly to the Westerly lines of said Sections 6 and 7; that the line established as the boundary line between said Sections 6 and 7 is for all practical purposes identical with the line of the old fence trace; that this fence remained until 1946 when it was moved south by defendant L. F. Roark to a line that is not even contended by defendants to be the boundary line between said Sections 6 and 7.

"7. That the plats and documents in evidence show that the North tier of Sections in Ranges 51, 52 and 53 West are all short sections due to the fact that the North boundary line of said sections is a correction line or standard parallel, and the fence traces on large numbers of such North tier sections East and West of said Section 6 are extensions of the same fence trace line of the old fence between Section 6 and 7 that to all practical pur-

poses is the line laid out by the Commissioner; that such extensions clearly indicate that there was a general recognition among all the land owners, whose sections were bounded on the North by the standard parallel or correction line; that their sections were short to the same amount as the old fence trace and the line found by the Commissioner as the true line shorts said Section 6. In the usual course of laying out sections in townships, the sections lying between the point marked by the stone in the highway intersections at which the Commissioner initiated his survey would be regular and the plat submitted with the Commissioner's reports and the Commissioner's testimony on the stand show that as he chained Northerly existing East-West roads, fences and fence traces appeared, with one minor exception at 5,280 feet intervals from the point of origin. * * * Furthermore, the Court is of the opinion and finds from all the testimony and exhibits that the Northerly line of said Section 7 as found by the Commissioner and shown on his second plat is the true boundary line between said Sections 6 and 7; and the Court further finds that the correctness of the Commissioner's location of the line between said Sections 6 and 7 is corroborated and supported by the fact that the evidence clearly establishes and the Court finds that the fence line trace that coincides practically with the line located by the Commissioner as the true line was in existence from 1918 for more than 20 years and was recognized and acquiesced in by the owners of Sections 6 and 7 as the true line separating the two sections."

██ We have examined the three volumes of record and the numerous exhibits and have reached the conclusion that in the procedures followed in the trial court there has been no violation of applicable statutes of the State of Colorado, namely, C.R.S. '53, 118-11-1 to 12 inclusive. C.R.S. '53, 118-11-9 provides that:

"Corners and Boundaries Established. — The corners and boundaries finally established by the court in such pro-

ceedings, or an appeal therefrom, shall be binding upon all the parties, their heirs, and assigns, as the corners and boundaries which have been lost, destroyed, or in dispute; but if it is found that the boundaries and corners alleged to have been recognized and acquiesced in for twenty years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established."

Without regard to the correctness of the starting point of the measurements made by the commissioner, there was ample evidence to support the specific finding of the trial court that for more than twenty years the boundary line between Section 6 and Section 7, as found by the commissioner, had been recognized and acquiesced in by the respective owners as the true line separating the sections. The commissioner, being unable to locate a more acceptable landmark, commenced his survey as a point about seven miles south of the line ultimately located where he found what he said was an original government stone set in the original survey of that township in September 1880. Measuring northward from that point of beginning, at intervals of 5,280 feet he found fence lines, or traces, indicating the correctness of his starting point and finally arrived at the point where witnesses testified that for more than twenty years the line had been acquiesced in by the respective owners of the two sections with which we are involved. Where such acquiescence is shown it is binding upon the parties and their successors in interest. *Camp v. Winegar,* 72 Colo. 160, 210 P. 64.

The defendants called an expert witness who took issue with some of the material evidence offered by the plaintiff. In legal effect the argument for reversal of the judgment is that the trial court should have accepted the testimony offered by the defendants, and that as a matter of law this court must say that the evidence offered by plaintiff, construed in the light most favorable to him, does not support the judgment. We hold that the evidence

sufficiently supports the findings of fact made by the trial court, and that no error was committed in applying the law to the facts as found by the court to exist.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE LEE concur.