Gail TERRY, individually and as the Personal Representative of the Estate of Bill Powers, Jr., a/k/a William B. Powers, Jr., Plaintiff–Appellant and Cross–Appellee,

v.

Fernando SALAZAR and Richard Pretto, Defendants–Appellees and Cross–Appellants.

No. 93CA0982.

Colorado Court of Appeals,
Div. III.

Aug. 11, 1994.

Rehearing Denied Oct. 27, 1994.

Certiorari Granted April 3, 1995.

Gary E. Hanisch, Walsenburg, for plaintiff-appellant and cross-appellee.

Alison Maynard, Craig, for defendants-appellees and cross-appellants.

Opinion by Judge PLANK.

Gail Terry, individually and as personal representative of the Estate of Bill Powers, Jr., (Terry) appeals the judgment of the trial court dismissing her action to quiet title to certain real property in Huerfano County. We reverse the judgment and remand for further proceedings.

The basic facts are undisputed. Terry, in her own right and as personal representative of Powers' estate, claims ownership of two 40-acre parcels of agricultural land. Defendants, Fernando Salazar and Richard Pretto, claim ownership of a tract to the west adjoining the property claimed by Terry. A fence parallels the public land survey lines between the two properties and is located some feet to the east of the survey lines inside the property claimed by Terry.

In 1971, an entity known as Mills Ranches, Inc., acquired the property now claimed by defendants. On November 3, 1977, Mills Ranches also acquired title to the property now claimed by Terry. On November 18, 1977, Mills Ranches, by its president Jerry Mills, deeded the property now claimed by Terry to Jerry Mills individually. Therefore, for a period of 15 days in 1977, Mills Ranches was the common owner of both Terry's and defendants' lands. None of the pertinent deeds describes the lands with reference to the fence as a boundary line; rather, each employs descriptions in accordance with the quarter section government survey.

Terry acquired her property on July 20, 1987. Mills Ranches lost the parcel now claimed by defendants following a foreclosure sale in 1979, and defendants eventually succeeded to title in 1989.

Terry broke the fence in April or May of 1989 and constructed a dam, ditch, and earthen pond. Terry thereafter commenced this action seeking to quiet title to her property claimed to extend to the west of the fence to the survey line. Defendants answered by denial, asserting the fence represented the actual boundaries of the properties, and sought by counterclaims damages for trespass, outrageous conduct, and emotional distress.

Following a bench trial, the court found that the fence had been in existence since 1888 and had always been recognized as the boundary by the parties' predecessors in title. The court noted that, in a previous action, a portion of the fence had been adjudicated in 1914 as the actual boundary between two adjoining parcels immediately to the south of the lands now in dispute. The court further found that Jerry Mills had recognized the subject fence to be the true boundary, and accordingly, it concluded that the fence represented the boundary between Terry's and defendants' properties by acquiescence from 1914 until 1989.

The court dismissed defendants' counterclaims as barred by the statute of limitations, although it awarded defendants nominal damages of one dollar for a *de minimis* trespass committed within the limitation period.

Terry now repeats her argument made before the trial court that the period of common ownership of the properties by Mills

Ranches abrogated any acquiescence chargeable to the parties concerning the fence as the actual division line. We agree.

If the respective owners of adjoining lands recognize and acquiesce in a boundary line dividing their properties for more than 20 years, then that boundary will be binding upon the parties and their successors. Section 38–44–109, C.R.S. (1982 Repl.Vol. 16A); *Forristall v. Ansley,* 170 Colo. 391, 462 P.2d 116 (1969).

■ There must be mutuality in the fixing of a boundary in order for acquiescence to be found. *Hartley v. Ruybal,* 160 Colo. 80, 414 P.2d 114 (1966). One of the tests for acquiescence in a boundary line, in addition to the existence of a fence over the prescribed period of time, is the actual possession and dominion over the property up to a fence.

■ It is a question of fact to be decided by the finder of fact as to whether a fence is acquiesced in as a boundary or merely exists to serve as a barrier. However, mere existence of a fence with evidence of nothing more is insufficient to sustain a finding that the fence operates as a boundary by acquiescence. *Hartley v. Ruybal, supra.*

■ Here, even if we assume that the trial court properly found that the fence by acquiescence marked the actual boundary of the parcels from at least 1914, the undisputed common ownership of the two parcels in 1977 removed the binding effect of any prior mutual recognition by nullifying the effect of the fence as a boundary between two separately owned parcels. Once ownership was joined, the fence no longer served as an external boundary, but only as an internal barrier.

■ When a common owner acquires title to adjoining tracts, any agreement as to division that had previously been made while the ownership was in two different persons ceases to exist or be effective. *Conklin v. Newman,* 278 Ill. 30, 115 N.E. 849 (1917). Moreover, a division fence between two properties loses its legal significance when separate ownership of the parcels is merged in one owner. 5 R. Powell, *Powell on Real Property* § 62.02[10] (1994). Consequently, the common ownership acquired by Mills Ranches in 1977 nullified any significance the fence had previously been accorded as a boundary between separately held parcels. Mills Ranches as a subsequent grantor could thereafter freely describe its conveyance by boundaries making no reference to the fence.

As to the trial court's findings that Jerry Mills recognized the fence as the boundary, we note that Mills himself did not testify. Another witness, a real estate broker, stated that Mills had generally motioned toward the fence when touring the parcel with the witness and while describing the extent of the tract. Under the circumstances here, such evidence or any inference drawn therefrom is not dispositive.

■ Deeds are generally construed in accordance with the general rules of construction of written instruments. A deed which accurately and correctly describes a tract of land is not subject to construction or interpretation. *Morrissey v. Achziger,* 147 Colo. 510, 364 P.2d 187 (1961). The intention of the parties to a conveyance is open to interpretation only when the language used is ambiguous. *Radke v. Union Pacific R.R. Co.,* 138 Colo. 189, 334 P.2d 1077 (1958).

■ Whether a deed is ambiguous is a question of law, and when the language of the deed is clear and of definite import, its effect is to be resolved by the court. Further, if a deed is unambiguous, extrinsic evidence is inadmissible and must be ignored, even if received without objection. *Appling v. Federal Land Bank,* 816 P.2d 297 (Colo. App.1991).

■ Moreover, because these questions concern issues of law, the trial court's findings are not binding on a reviewing court. *Littlehorn v. Stratford,* 653 P.2d 1139 (Colo. 1982).

■ Here, the deed from Mills Ranches to Jerry Mills unequivocally and unambiguously describes the parcel in terms of the nomenclature of the public land survey system as to the boundaries of the devised estate, without any reference to the fence. This description was repeated in Mills' conveyance to Terry's predecessors in title. As

noted above, the common ownership of the property destroyed any effect of prior acquiescence concerning the fence as a boundary. Accordingly, the conveyances delimited the boundary of the parcel in terms of the surveyed lines, and consideration of extrinsic evidence was error.

Because of our result, we need not reach defendants' issues raised on cross-appeal.

The judgment is reversed, and the cause is remanded for further proceedings.

JONES and KAPELKE, JJ., concur.