20CA1671 Dwight v Morfitt 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA1671 Gilpin County District Court No. 18CV30004 Honorable Dennis J. Hall, Judge Joshua Dwight, Plaintiff-Appellee, v. Becky Morfitt, Defendant-Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE NAVARRO Grove and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Moye White LLP, Jack W. Berryhill, Rachel E. Yeates, Kelsey R. Bowers, Denver, Colorado, for Plaintiff-Appellee Coaty Marchant Woods, P.C., John D. Coaty, Anita L. Marchant, Dylan Woods, Natalie R. Norcutt, Evergreen, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Becky Morfitt, appeals the judgment entered in favor of plaintiff, Joshua Dwight, resolving a dispute over property ownership. We affirm. I. Background ¶ 2 In 1992, Morfitt purchased a property in Gilpin County from Leo and Jean McDonald (the Morfitt Property). Directly to the west of the Morfitt Property is property owned by Dwight (the Dwight Property). Dwight bought it in 2017 from Norm Hicks, who had inherited it from his mother in the mid-1970s. Hicks’s mother purchased the Dwight Property in 1961. ¶ 3 A barbed wire fence runs north to south between the northern confluence of both properties and Smith Hill Road. At the south end of the barbed wire fence — where it meets Smith Hill Road — is a gated driveway leading onto the Dwight Property. The area between the barbed wire fence and the western surveyed boundary of the Morfitt Property, including the gated driveway, is the subject of the parties’ dispute. We refer to this approximately 0.5-acre area as the “Disputed Property,” and it is diagramed below. 
2 ¶ 4 In June 2017, Dwight began constructing a log fence parallel to and on the western side of the barbed wire fence. Morfitt confronted Dwight and told him that he was on her property. ¶ 5 After the parties could not settle their dispute, Dwight filed the present action seeking to quiet title to the Disputed Property. As relevant here, Dwight argued that he and his predecessors in interest had adversely possessed the Disputed Property and, alternatively, that the parties and their predecessors in interest had acquiesced to the barbed wire fence as the boundary between the properties. Morfitt counterclaimed, also seeking to quiet title to the Disputed Property. 
3 ¶ 6 After a bench trial, the trial court issued a written order finding that Dwight and his predecessor in interest, Hicks, had adversely possessed the Disputed Property. As an alternative basis on which to find that Dwight owned the Disputed Property, the court found that the parties and their predecessors in interest had acquiesced to the barbed wire fence as the boundary between the two properties. In a separate order, the court issued a quiet title decree to the Disputed Property in favor of Dwight. ¶ 7 In a later minute order, the trial court awarded Morfitt $7,280, the value of the Disputed Property. Morfitt accepted a check from Dwight for that amount, less Dwight’s awarded bill of costs and half the cost of a survey of the Disputed Property, and cashed it. She also signed a quitclaim deed per the court’s order. II. Acquiescence ¶ 8 Among other contentions, Morfitt contends that the trial court clearly erred by finding that the parties and their predecessors in 
4 interest had acquiesced to the barbed wire fence as the property boundary. We are not persuaded.
1 A. Applicable Principles ¶ 9 Under section 38-44-109, C.R.S. 2021, “if it is found that the boundaries and corners alleged to have been recognized and acquiesced in for twenty years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established.” Thus, where property owners place a fence somewhere other than the true boundary dividing the properties and then, for twenty years thereafter, conduct themselves as to indicate that they claim no property interest beyond the fence, a court may find that the parties acquiesced to the fence as the property boundary. Hartley v. Ruybal, 160 Colo. 80, 85, 414 P.2d 114, 116 (1966). ¶ 10 There must be “mutuality in the fixing of a boundary in order for acquiescence to be found.” Id. at 84, 414 P.2d at 116. Where acquiescence is shown, it is binding upon the parties and their 1 Given our disposition, we need not resolve Dwight’s claim that Morfitt waived this contention by accepting the benefit of the trial court’s judgment. 
5 successors in interest. Forristall v. Ansley, 170 Colo. 391, 396, 462 P.2d 116, 119 (1969). ¶ 11 Acquiescence to a property boundary is a question of fact. Terry v. Salazar, 892 P.2d 391, 393 (Colo. App. 1994), aff’d, 911 P.2d 1086 (Colo. 1996). A trial court’s factual findings are binding on appeal unless they are so clearly erroneous as to find no support in the record. St. Jude’s Co. v. Roaring Fork Club, L.L.C., 2015 CO 51, ¶ 34. B. Analysis ¶ 12 The following evidence supports the trial court’s finding. ¶ 13 Hicks, Dwight’s predecessor in interest, testified that he believed the fence existed long before his mother purchased the Dwight Property in 1961. Despite some ambiguity surrounding the fence’s origin, Hicks testified that he had considered the fence to be his property’s eastern boundary. Accordingly, Hicks and his family and friends conducted their activities on the property to the west of the fence. When Hicks sold Dwight the property, Hicks represented that the fence was the property line. Neither Hicks nor Dwight ever conducted activities east of the barbed wire fence. 
6 ¶ 14 Hicks also testified to an incident involving a Boy Scout retreat on his property. At that time, Jean McDonald (Morfitt’s predecessor in interest) complained that a scout had crossed onto her property to ask to use the telephone. In response, Hicks instructed the scouts not to do that anymore, “not to bother the neighbors.” When asked at trial whether the scout had “gone over on the other side of that barbed wire fence,” Hicks said, “Not to my knowledge.” ¶ 15 On appeal, Morfitt cites this testimony as proof that Hicks did not consider the fence to be the property boundary. Read in context, however, it seems that Hicks meant merely that he did not have personal knowledge of whether the scout had crossed the fence line. Hicks duly reacted to his neighbor’s complaint that the scout had done so. In any event, to the extent the evidence of Hicks’s acquiescence to the fence as the property line was conflicting, it was the trial court’s province to resolve the conflict. See In re Marriage of Hatton, 160 P.3d 326, 335 (Colo. App. 2007). And there is ample record support for the court’s finding that Hicks recognized the fence as the property line. ¶ 16 Additionally, the record supports the court’s finding of acquiescence by Morfitt and her predecessors in interest. Jean 
7 McDonald testified that, when she and her husband owned the Morfitt Property, they believed the barbed wire fence represented the property line. Her husband even performed maintenance on it. ¶ 17 After purchasing the Morfitt Property, Morfitt installed a “dog run” that abutted the east side of the barbed wire fence. She did not extend the dog run to the west of the fence. She testified, however, that she never considered the fence as representing the property line. She further testified that she considered the fence to be a safety hazard, but she never attempted to repair or remove it. ¶ 18 After considering all the evidence, the court declined to credit Morfitt’s testimony that she did not consider the fence as marking the property line. The court gave the following explanation: The court finds that Ms. Morfitt acquiesced in the barbed wire fence as the property line separating her parcel from the Dwight property. Ms. Morfitt conducted herself with respect to the land on each side of the fence so as to indicate that she claimed no property west of the fence. She exercised control and dominion over the land up to the barbed wire fence on the east side by constructing a dog run that abutted the fence. The court heard no evidence of similar uses by Ms. Morfitt of the land on the west side of the barbed wire fence. Why would Ms. Morfitt make improvements to only one side of the fence and leave the other side untouched unless she 
8 believed the fence to represent her property boundary? Similarly, in locating the dog run so that it ran alongside the east side of the fence, Ms. Morfitt indicated her recognition of the boundary of her property. This is also shown by her failure to remove the barbed-
wire fence. Her conduct indicates that she recognized the barbed wire fence as the property boundary and that she claimed no property west of that fence. ¶ 19 Morfitt argues that the trial court should have given more weight to her testimony and less weight to Jean McDonald’s testimony (which Morfitt describes as “poorly informed”). As noted, however, the credibility of witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the trial court’s province. E.S.V. v. People in Interest of C.E.M., 2016 CO 40, ¶ 24. We may not second-guess those decisions where, as here, the record provides support for them. ¶ 20 We also disagree with Morfitt’s suggestion that the court’s analysis was improper as a matter of law because the court asked a rhetorical question. In assessing her credibility, the court correctly considered the reasonableness or unreasonableness of her testimony, the consistency or lack of consistency of her testimony, 
9 and any other circumstances that affected her credibility. See Holley v. Huang, 284 P.3d 81, 86 n.3 (Colo. App. 2011). ¶ 21 In sum, because the record supports the trial court’s finding that the parties and their predecessors in interest acquiesced to the barbed wire fence as the boundary between the properties for the statutory period, we may not disturb that finding. III. Other Contentions and Costs of Appeal ¶ 22 Morfitt also challenges the trial court’s adverse possession ruling. We need not reach that challenge, however, because we affirm the court’s decision that Dwight owns the Disputed Property due to the acquiescence to the barbed wire fence as the property boundary. ¶ 23 Finally, we grant Dwight’s request for an award of costs incurred in this appeal. See C.A.R. 39(a)(2). IV. Conclusion ¶ 24 The judgment is affirmed. JUDGE GROVE and JUDGE PAWAR concur.